IVERSON, trustee, *et al. vs.* SAULSBURY, trustee, *et al.*

1. It is too late, at the trial term of an equity cause, to move to dismiss the bill because there is a complete common law remedy.

(*a*) Where the beneficiary of trust property illegally sold, was a minor, and after attaining majority he repudiated the sale and brought ejectment for the lot, a bill to enjoin the same, claiming compensation for valuable improvements innocently placed thereon by the purchasers, would not be. without equity.

2. Where a bill was brought to enjoin an action of ejectment, it was too late to move to try both cases together after the testimony in the equity cause had closed and the argument was about to begin.

3. Where in an equity cause, questions were drawn up by counsel for complainants, and read in the hearing of opposing counsel, it was not sufficient for the latter to state generally that he objected to the questions ; he should have specified the grounds of objection, and where he agreed to state them in argument, but failed to do so, the objection will not be considered here.

4. The verdict is not contrary to the evidence.

5. A chancellor at chambers has jurisdiction, under section 4221 of Code *et seq.*, to order a part of a trust estate to be sold to pay a

debt which was an incumbrance on the whole estate, the *cestui que trusts* assenting thereto, and all parties in interest having notice and being properly represented.

6. Although a purchaser from a trustee may have had notice of the trust, yet if he also had notice that his grantor held the claim which bound the trust estate, and received a deed from the trustee, under authority of the chancellor, conveying a portion of the trust estate, he would stand, in equity, upon the same footing as a purchaser without notice.

7. Beneficiaries of trust property sold under an invalid order of the chancellor, who for years have seen the purchasers erecting valuable improvements thereon without objection, are estopped from setting up title thereto.

(*a.*) Would a minor old enough to understand his rights be estopped by similar conduct?

Trustees. Equity. Jurisdiction. Practice in the Superior Court. Before Judge SIMMONS. Bibb Superior Court. April Term, 1880.

Reported in the decision.

R. F. LYON, for plaintiffs in error.

HALL & SON, for defendants.

JACKSON, Chief Justice.

B. V. Iverson, as trustee for wife and son, being in possession of two adjoining lots—five and six—in square seventy, in the city of Macon—under an order or decree in chancery rendered by judge Cole at chambers—sold lot number five at the price of $2,500.00 to Collins & Son. James Iverson, his son, and *cestui que trust*, having attained his majority some time before, brought an action of ejectment for the said lot, in the year 1878, on the several demises of Iverson, trustee, and Mrs. Iverson, his mother, and himself. To enjoin this suit, Saulsbury, as trustee for his mother and her children, brought a bill on the ground that they had paid for the lot as purchasers

without notice, holding it from Collins & Son; that they had put on' it improvements to the value of seven or eight thousand dollars, and had paid taxes on it to the amount of eight or nine hundred dollars—that James Iverson, and his father, the trustee, and his mother, the other *cestui que trust*—lived all the while on the adjoining lot number six, and knew all about these improvements.     James being either of age, or old enough to know all his rights in the premises, and yet none of them uttered any word of warning or objection, and are therefore estopped— that the consideration of the sale to Collins & Son sup- ported these *cestui que trusts*—and that equity and good conscience will not allow them to recover the lot with the improvements thereon.

On the trial of this equity cause, the jury found a spe- cial verdict on the questions propounded by the court, and on that verdict a decree was rendered, vesting the title to the lot in the Saulburys, and perpetually enjoin- ing the Iversons from pressing the action at law, or oth- erwise interfering with the title so vested in the com- plainants.    Thereupon the defendants made a motion for a new trial on many grounds therein stated, which motion was not granted by the court, and defendants bring their writ of error to this court for the refusal to grant the mo- tion.

1. The first ground is that the court erred in not dis- missing the bill for want of equity, and because the rem- edy at law was complete.

The latter reason cannot be considered, because the motion to dismiss the bill was made on the hearing at the trial term—too late to dismiss the bill on account of an adequate remedy at law.

But there is equity in the bill.    If the defendants could recover at all, it is quite clear that they must pay for the improvements.    If James Iverson had been an infant when the lot was sold and the improvements were made, and when he attained his majority repudiated the sale of

Iverson, trustee, *et al. vs.* Saulsbury, trustee, *et al.*

the naked lot, it would be inequitable to permit him to recover it with such valuable improvements made by the purchasers, without compensating them in some sort at least for their improvements, and to mould a proper judgment in such a case, demanded either an equitable plea, or a regular bill in defense of the ejectment suit. And the complainants could use either remedy at their option.

2. The second ground is not more solid than the first. It is because the court refused to try the ejectment suit and the equity-cause together. Without considering other reasons for declining to try two cases at once, it is enough to say that the motion was not made until the testimony was concluded and the argument was about to begin. It came too late.

For the same reason there is nothing in the motion of defendants to open and conclude the argument.

3. The complaint that some of the questions propounded were not fairly put, and that others were irrelevant to the issue, is not well grounded under the explanatory note of the presiding judge. The judge says that the questions were drawn up by counsel, and read in their hearing, and while defendants' counsel did make general objection to the questions prepared by complainants' counsel, yet he did not specify what they were, though requested to do so, and promising to specify them in the course of his argument to the jury.

It is obvious that if anything irregular was done under such circumstances, the laches of defendants prevented the correction which might have been made, and no new trial should be granted for such objection, not specified when counsel was required to specify the ground of his complaint. But we cannot see that anything was done so irregular or improper in the questions propounded as to hurt the defendants.

4. Again, it is alleged that the verdict of the jury is contrary to the weight of the testimony on several issues presented to them.

We think that there is evidence enough to sustain the answers which are material to a proper adjudication of the cause, and a legal decree thereon ; and such being the case, it becomes unnecessary to inspect closely each question and the answer thereto, and testimony thereon not affecting the real merits of the case.

The testimony, though conflicting it may be, is sufficient to authorize the finding that Saulsbury is an innocent purchaser without notice of the usury in the Collins & Son's transactions with Iverson, if there was usury, or that their advances were not made for the benefit of the trust estate and of the *cestui que trusts*; though these questions themselves are hardly essential in the view we take of the case.

5. The great question in the case is whether the chancellor at chambers had jurisdiction to order the sale of this lot by this trustee with the assent of the *cestui que trusts*, and to direct the deed to be made by the trustee to Collins & Son in settlement of their debt of twenty-five hundred dollars, and thus to lift this amount of indebtedness from No. 6, on which the dwelling of the Iversons stood.    If the chancellor had jurisdiction to make that decree, inasmuch as Mrs. Iverson assented to it in person, and James Iverson by guardian *ad litem*, appointed by the chancellor, all other objections on pre-existing facts are concluded by that decree at chambers, just as completely as they would have been concluded by bill tried and decreed upon in open court.

The power, if it exists, must be derived from our statutes, and is to be found in the Code.

Section 4221 declares that, " all proceedings *ex parte* or in the execution of the protective powers of chancery over trust estates, or the estates of the wards of chancery, may be presented to the court by petition alone, and such other proceedings be had therein as the necessity of each case may demand."

The next section—4222—enacts that such courts are

always open, and that the judge may receive and act upon all such petitions at chambers, transmitting the proceedings to the clerk, to be entered on the minutes or of record.

The next section, 4223, declares that in applications *for the sale of trust property*, the removal of trustees or the investment of trust funds, or similar cases, where persons other than the applicant are interested, notice to such persons is necessary, and the next, 4224, declares that, "if minors are interested and they have no guardians, guardians *ad litem* must be appointed and notified before the cause proceeds."

These four sections are embodied in chapter sixth, title twenty-fifth, and part third of the Code, and stand together. They appear to vest in the chancellor at chambers full power over trust estates in respect to the removal of trustees, the sale of trust property and the investment of trust money. In the exercise of these great powers chancellors should be cautious and see that the case is clearly made out, and that their wards are protected and their estates are preserved and their rights protected, just as in open court and before a jury it would be their duty to see that the same rights are protected. But if they have the jurisdiction at chambers, the presumption is that all these rights are as well guarded as before the juries in open court. The security of the trusts and the interests of beneficiaries rest in the one case as in the other, mainly in the heart of the intelligent and upright judge.

It was the duty of the chancellor in this case to investigate the facts, to see that there was no collusion, to guard the interests of all parties, and to make such a decree as would be best for the trust estate, to relieve it from its indebtedness, and at the same time to do justice to one who had given legitimate credit for the benefit of that estate and of its beneficiaries. The presumption is that judge Cole did all this, and by this decree, these par-

ties being all represented before him, it would seem are concluded as effectually as they would have been by a decree in term. Other sections of the Code corroborate the view we take in regard to the power given the chancellor at chambers by those we have cited. Section 2327 declares that the *corpus* of the trust estate may be sold by order of the court of chancery, that the application may be made to the judge in vacation, on full notice to all parties, and the order to sell may be granted by the judge at chambers, the proceedings to be recorded as in cases of appointment of trustees. And section 2328 declares that such sales, *unless otherwise provided in the order*, shall be made under the same rules and restrictions as administrators' sales. This sale was otherwise provided in the order. The terms were all settled and fixed by the order. It needed no confirmation as a public chancery sale would ordinarily require; because the price, the purchaser and the entire contract, were all fixed beforehand in the order of sale.

6. But suppose that we are in error in all this, still, if Saulsbury purchased innocently of Collins & Son, he would be protected in equity, though the original sale to Collins & Son was had only under color of judicial decree. Section 2329 of our Code provides, that without any such order or decree, if Saulsbury had bought *bona fide*, and without notice of the trust, he would be protected. Here he bought, it is true, with notice of the trust, but with notice, too, that his grantor had a debt which bound the trust estate, having benefited it and supported the beneficiaries, and held a deed, the consideration of which was that debt, and that deed, too, authorized by the order of the chancellor. Is not his case full of equity, and almost, if not altogether, as strong as that of the purchaser without notice of the trust?

7. Again, are not these beneficiaries estopped by their conduct from setting up their title against that of Saulsbury? James Iverson, if not of age from 1873 to 1875,

while this improvement was made on this naked lot, must have been very near it. It is a little remarkable that his age is not disclosed exactly, but he seems to have been near his majority in 1871, when the purchase was made, and, from the record, had reached it before the improvements were completed. Yet he interposed no objection. Mrs. Iverson was estopped, and he was clearly estopped, too, if of age, and upon analogy to that ruling in *Dotterer vs. Pike*, 60 *Ga.*, 29, it would seem he was estopped if he knew his rights, and fraudulently saw this large expenditure of money on his property without making known his interest; certainly he would be as to the improvements put on the lot.

In any view of the case which we are able to take from the record before us, we are constrained to conclude that the decree is right, and should be enforced.

Judgment affirmed.