IVERSON *et al. vs.* SAULSBURY, RESPESS & CO.

[This case was argued at the last term, and the decision reserved.]

While a chancellor sitting at chambers, on full notice to all parties, may order a sale of trust property, he has no power to grant authority to a trustee to mortgage a trust estate, and a mortgage so given will not bind the *cestuis que trust.*

(*a.*) We do not decide that a court of chancery in term time might not grant authority to encumber a trust estate.

Trusts. Powers. Courts. Mortgages. Before Judge SIMMONS. Bibb Superior Court. April Term, 1881.

Reported in the decision.

LYON & GRESHAM, for plaintiffs in error.

HALL & SON, for defendants.

SPEER, Justice.

Benjamin V. Iverson, as trustee for Mrs. Juliet A. Iverson and her children, petitioned C. B. Cole, judge of the Macon circuit, stating that the income of the trust estate held by him for plaintiffs in error was inadequate to their support and maintenance, and it was necessary for him to raise means for their support and to preserve and protect the corpus of said estate, and the only way to do this was to negotiate a loan secured by mortgage on the house and lot, in the city of Macon, occupied by himself and family, and held by him as trustee. He, therefore, prayed for an order authorizing him to execute a mortgage upon the trust property specified to secure the payment of his note for the sum of $1,725.co. On the 9th June, 1866, Judge Cole, at chambers, appointed George W. Hardie, guardian *ad litem* for James S. Iverson, a minor son. He accepted the appointment, and united in the petition to have said loan negotiated and mortgage

executed. On the 11th June, Juliet A. Iverson and said Hardie, guardian *ad litem*, consented to the petition, and asked that it be granted. It was then, and on their statements, that the order was granted by Judge Cole. On the same day, B. V. Iverson, as trustee for his wife, Juliet A., and her children, executed a mortgage deed to James E. Graybill, on city lots 5 and 6, in square 70, to secure the payment of a note by B. V. Iverson, as trustee, for the sum of $1,725 00, payable six months after date. The mortgage was duly recorded, and payments made thereon to the amount of $1,306.00.

James Graybill afterwards petitioned for the foreclosure of the mortgage on the property, in Bibb superior court, against B. V. Iverson, the trustee, who accepted service on the rule *nisi.* At April term, 1873, a rule absolute was allowed, foreclosing said mortgage for the sum of $1,046.33, with interest. Subsequently the *fi. fa.* issued from the judgment of foreclosure was transferred to defendants in error, and levied on lot 6 in square 70 as part of the mortgaged premises, and advertised for sale.

Whereupon Juliet A. Iverson, and her son James S. Iverson, the only beneficiaries, filed their bill in Bibb superior court, alleging the property levied on was held under a deed from Samuel F. Dickerson, trustee, to B. V. Iverson, as trustee, for the sole and separate use of his wife, Juliet A., for life, with remainder to her children, which was but a reinvestment of money held by Benjamin V. Iverson, trustee, from the sale of a house and lot in Columbus, secured to the like uses by the will of James Smith, the father of said Juliet A., the said lot being the residence of said *cestuis que trust*, and the only home they had, and that the money received on said mortgage, by said Iverson was not applied to the uses or benefits of said trust, but was employed and put to his individual use, in farming on a plantation which he was carrying on on his own account, in Houston county. An injunction is asked for on the ground that B. V. Iverson, trustee, had as such,

no power to execute said mortgage; that it was not a charge on the property, but a mere nullity; that it was not properly foreclosed; no rule *nisi* as required by law; it was not signed by the court, or entered upon the minutes; *cestuis que trust* were not made parties on the proceeding to foreclose; the debt was not the debt of the trust estate, but of B. V. Iverson, individually; that the mortgage deed, debt, etc., were clouds upon complainants' title. The purpose was to remove said cloud, to quiet, protect and insure said title against the debt and mortgage *fi. fa.*, and have them declared void and of no effect, and to have the defendants enjoined accordingly.

To this bill defendants demurred on the grounds:

(1.) There was no equity in the bill.

(2.) That they had an adequate remedy at law.

(3.) Because James Iverson has no interest in the subject matter, and is an improper party.

(4.) Because B. V. Iverson is not a party to said bill.

(5.) Because Juliet Iverson has an interest in said property which she can mortgage, and she is estopped by the proceedings from disputing the validity of the mortgage.

The demurrer, on argument had, was sustained by the court, and complainants excepted, and assign the same as error.

The main question involved and relied upon by counsel for plaintiffs in error, is that the judge at chambers had no authority to sanction or authorize the execution of this mortgage upon the trust property, but that the order is void.

He insists that this being a simple trust for the sole and separate use of the wife for life with remainder to the children in fee, and with no special powers to the trustee, he could neither make this mortgage so as to constitute a charge upon this trust, nor did the judge of the superior court at chambers have any authority under the statute to confer such power on the trustee. It is a general rule, that trustees are not authorized to create any lien

upon the trust estate, except such as are given by law.
Code, §2335. It is admitted that there is no special
power conferred upon the trustee under this deed to exe-
cute this mortgage, but defendants in error rest their au-
thority for the execution of this mortgage deed alone upon
the order of Judge Cole, granted at chambers with the
consent of the *cestuis que trust* under the act of 1853-4.
Before the act of 1853-4 it was held by this court in the
case of *Arrington vs. Cherry*, 10 *Ga.*, 429, that a judge at
chambers has no power, upon petition, to order a sale of
trust property. "Chancery jurisdiction is conferred," said
the court," in this state upon the superior courts, and not
upon the judges thereof." Subsequently to the rendering
of this decision, which was pronounced in the year 1851,
the legislature passed an act in 1853-54, which we
find embodied in the Code, §2327, in the following lan-
guage : "A trustee, unless expressly authorized by the act
creating the trust, or with the voluntary consent of all the
beneficiaries, has no authority to sell or convey the corpus
of the trust estate, but such sales must be by virtue of an
order of the court of chancery upon a regular application
to the same. Such application may be made to the
judge in vacation on full notice to all the parties in inter-
est, and the order for such sale may be granted at cham-
bers, the proceedings to be recorded as above provided,
on application for appointment of trustee."

By the acts of 1853-54-55-56, thus codified, it will be
seen that the judge may at chambers, on full notice to all
the parties at interest, or to use the words of the original
act, 1853-54, pages 59 and 60, " where all parties in interest
are represented and consenting and where there is no
question of fact in dispute, the judges of the superior
court are authorized to make and pass all orders and de-
crees in relation to the appointment and removal of trus-
tees and the sale and division of trust or other property,
or the investments of trusts or other funds."

Section 249 of the Code further declares, " said judges.

cannot exercise any power out of term time except the authority is expressly granted, but they may, by order granted in term, render a judgment in vacation."

The power given by express statute to the judge in vacation acting as chancellor, seems under the act of 1853–4 to be limited to the appointment and removal of trustees, sale and division of trust or other property, or the investment of trusts or other funds. No authority is conferred upon him by order at chambers to charge a trust estate with liens or mortgages, and unless this power is conferred expressly he is forbidden to exercise such a power out of term time. We cannot see that the powers conferred on the judge under the acts recited gives any power to the judge at chambers to authorize a trustee to borrow money, make a mortgage, or create any change upon the trust estate.

The object of the act of 1853, seems to be to provide a speedy method for the appointment and removal of trustees, sale, division of trust property and investment of trust funds, and in this way in proper cases to benefit and promote the objects of the trust. This power thus conferred by statute is limited, and can be exercised only in the cases and mode prescribed by the legislature. Gray *vs.* Hart, 3 Sum., 339; 8 Howard, 441. We would not be understood as ruling that, on a proper case made, a court of chancery, which is the superior court sitting in term, would not have authority to charge a trust estate by a mortgage lien or allow the trustee to raise money on the same for the preservation or protection of the corpus of the estate, but we do not find any authority of that kind conferred by law on the judge at chambers under the act heretofore recited. It is insisted a power to sell necessarily includes the power to mortgage. But the Code provides that authority to act in chambers must be expressly granted. A contrary doctrine was likewise declared in 16 Beav, 400; 38 Barb, 473; 10 Barb, 522. Perry on Trusts, sec. 768.

"So a simple power to sell will not authorize a partition." Hill on Trustees, 476; 11 Vesey, 467. "Trustees with power to sell cannot grant leases." Hill on Trustees, 476; 8 Simon, 217; 3 Day, 389.

These views, in favor of this construction, given to the act of 1853 and 1854, under which it is claimed the judge at chambers authorized the execution of this mortgage, are strengthened by the rulings of this court in the case of *Milledge vs. Bryan,* 49 *Ga.,* 397, in which it was held that the judge at chambers had no power by virtue of this act to order the sale of property belonging to minors, unless it was held by them in trust or was within equity jurisdiction by reason of some pending litigation in a court of equity. A like decision sustaining the last was rendered also in the case of *Knapp vs. Harris,* 60 *Ga.,* 399.

If the order granted by the judge at chambers was void for want of authority, it is as though the mortgage was executed by the trustee alone. There is no special power in the deed to this trustee that gives him any authority either to sell or mortgage. The Code, §2335, denies to trustees the authority to create any lien upon the trust estate, except such as are given by law, and in construing this provision of the Code in the case of *Taylor & Co. vs. Clark,* 56 *Ga.,* 309, Judge Warner, in delivering the opinion of the court, said: "We are not aware of any law in this state that gives to a trustee authority to create a lien upon the property of the trust estate."

As to the demurrer made that B. V. Iverson was not made a party defendant, this can be easily remedied by amendment. We are of opinion that the judge, under our view of the law erred in sustaining the demurrer and dismissing complainant's bill.

Let the judgment below be reversed.

v 68—52

CRAWFORD, Justice, concurring.

I concur in the judgment pronounced in this case and for the seasons set out in the opinion of Justice Speer.

It is said, however, that this judgment is inconsistent with that pronounced in the case of *Iverson, trustee, et al. vs. Saulsbury, trustee, et al.*, reported in the 65th *Ga.*, 724. This may be so for some reasons not affecting my concurrence therein. My approval of that judgment was based chiefly upon the ground that the beneficiaries were estopped by their conduct from setting up their title against that of the Saulsburys. See head-note 7, and the opinion elaborating the same. Next, because the decree of the chancellor was upon a subject matter of which, and of persons over whom he had ample and unquestioned jurisdiction, as shown by head-note 5, in the same case, and the reasons given therefor in the opinion. If, then, he had such jurisdiction, his decree was final and conclusive as to all matters upon which that decree was rendered In the words of the justice pronouncing the judgment, " All other objections on pre-existing facts are concluded by that decree at chambers, just as completely as they would have been concluded by bill tried and decreed upon in open court."

The incumbrance, its character, its validity and every thing thereunto appertaining were pre-existing facts with which it was too late to deal, and which I thought was the true intent and meaning of the decision wherein it was held that they were all passed upon and concluded by the decree.

Whether the incumbrance was authorized or not by the approval of the chancellor at chambers, was a dead question after a sale had been decreed, the property sold in pursuance thereof, expensively improved under the very eyes of the *cestui que trusts*, and years had elapsed before the sale was attacked. That is not this case. Nor do the words " sell or convey " as used in section 2327 of

the Code mean, refer to, or include anything else than a sale of the *corpus* of the trust estate, for in the very sounding line it says "such sale must be by virtue of an order of the court of chancery."

JACKSON, Chief Justice, dissenting.

I dissent from the judgment of the majority of the court in this case.

The point has been decided virtually by a unanimous bench of this court directly in the teeth of the judgment now rendered. 65 *Ga.*, 724. A lien precisely like this had been ordered by the chancellor at chambers to be placed on property in that case; and to pay that lien a sale of part of the property covered by it was directed to be made by the chancellor at chambers. If that lien were no lien at all, of course the court was wrong in having it paid. It was no lien, if neither the trustee could make it himself, which I do not dispute; nor the chancellor do it or authorize it done at chambers, which I do dispute. But my brethren hold that the chancellor could not at chambers authorize the trustee to make the mortgage, and therefore it is void.

If so, in the 65th *Ga.*, 724, this court affirmed a decree to pay a void lien out of trust property, which decree was had, too, at chambers. It is clear that the court as then constituted did not think the lien void, and therefore did not think that it was perpetrating the absurdity of enforcing in equity a void thing, that is a wholly dead thing, and bringing it to life and having it made so lively as to be paid out of trust property.

It is remarkable, too, that the parties in the case of 65th *Ga.*, 724, and the case before us now are substantially the same; that the lien was created on the same property in the two cases, and that authority was given by the same able and experienced and distinguished Judge Cole to create the lien in both cases. "*Stare decisis*" is too

sound and vital a doctrine to all the interests of society to allow me to give my sanction to a departure from its application to any case, but where it is sought to nullify it in a case which springs out of the very same facts and attached to the same property, and affects the same litigants, it strikes me as going beyond all reason.

But if it were a new question, I should hold that the chancellor at chambers had power where the facts were not in dispute, as is the case here, to authorize the conveyance set out in this record, and precisely similar to that which this court directed to be paid in the case in 65th Ga., 724, the case of *Iverson, trustee, et al., vs. Saulsbury, trustee, et al.*

What is the statute? I refer to the case in the 65th, and the opinion there reported, for reference to all the sections of the Code which bear on the power of the chancellor to direct the sale of trust property at chambers. It seems to me, that on the principle that the greater includes the less, the power to order the sale would convey with it the power to convey with the right to redeem or to mortgage property. Otherwise whenever the trust estate became involved to support starving beneficiaries, the chancellor could not relieve it except by sale of the *corpus*, though the rental when due, or the crop when matured, could easily have satisfied a lien if the same judge could have authorized its creation without parting forever with the title. The position is that the general assembly meant to empower the chancellor at chambers to kill the trust estate, to destroy all the *corpus*, but in no event to preserve it by empowering the trustee to put a little lien thereon, when it was clear to his judicial mind that the mortgage would be satisfied by the income as soon as due and the entire *corpus* be saved.

Did the codifiers and the legislature do so absurd a thing? Certainly not, all reason would reply; and when we look at what they did as written and printed, it will

be seen that they did precisely what reason would lead us to conclude that they should have done.

Section 2327 of the Code is in these words:

"A trustee, unless expressly authorized by the act creating the trust, or with the voluntary consent of all the beneficiaries, has no authority to sell or convey the *corpus* of the trust estate, but such sales must be by virtue of an order of the court of chancery upon a regular application to the same. Such application may be made to the judge in vacation on full notice to all parties in interest, and the order for such sale may be granted at chambers, the proceedings to be recorded as above provided on application for appointment of trustees." It will be seen that the restriction is upon the trustee himself, neither to sell or convey, but the power is given to the chancellor to authorize the act, and then it may be done. It is true that the section afterwards employs the words "such sales;" but the spirit of the act is undoubtedly the selling or conveying alluded to in the restrictive words above. Now, a mortgage is a conveyance; it is a deed, in some cases even in this state, in all cases elsewhere almost, it passes title, and the mortgagee enters and uses the fruits of possession until the debt is paid.

So that, if not from the words of the statute, from its reason and its spirit, the legislative mind is seen to be that without authority from the beneficiaries, or from the donor in the trust paper, a trustee cannot sell or convey any of the *corpus* of the trust estate, unless he shall procure authority to do so from another source of power, to-wit, a court of equity. There are but three modes known to our law by which he can sell or convey—in any sense of the latter word—any part of the *corpus* of an estate entrusted to his management. One is where it is so nominated in the terms of the trust deed or will by the creator of the trust; the second is where all the beneficiaries assent to it; and the third is where, the power not being in the deed or will, and the beneficiaries,

or some of them, withholding assent, the chancery powers of government are allowed to interpose and to grant the power. In cases where the terms of the trust do not give the power, and where any one beneficiary refuses assent, it is absolutely necessary from the wants of society and the vicissitudes incident to all human life and fortune, to vest authority somewhere for relief. Taxes must be paid, and the income may not pay them, from some disaster to the crop if in the country, or from fire if in a city. Shall the *corpus* be sold to pay them, and is the remedial power of the chancellor restricted to the sale alone? The fire damages, but does not destroy, the tenements in a city, and repairs are absolutely necessary, or stores remain untenantable and unrented. Must the valuable land and the tenement standing thereon be sold to raise money to repair, and is the chancellor confined to that mode of raising it, and may he not put, or authorize to be put, on that land and damaged tenement a lien to be paid when the repair is made and the stores again rented and the rent collected? If such be the law, it is a bad law and very disastrous to the *corpus* of trust estates. In the cases put they cannot be preserved at all, but must be sold and sacrificed in a damaged condition, and the proceeds of the sale at such sacrifice be reinvested at much loss to the *corpus*.

To preserve a trust estate, to supervise its management, to hold the trustee to the line of duty for the purpose of preserving its *corpus* for the benefit of the beneficiaries, is an elementary branch of equity jurisprudence; and yet it is now held that equity cannot preserve it by creating a lien or mortgage on it which it clearly sees the income will pay when due, but must sell it or part of it, whether divisible advantageously or not, to save the beneficiaries from want of the necessaries of life, or to preserve part of the *corpus* at a ruinous sacrifice of another portion thereof.

But it may be said that the judgment of the majority

of the court is not that equity cannot authorize the mortgage, but that the chancellor at chambers cannot do so. Such is not the statute, and it would be quite disastrous to trust estates if it were the law.

Shall parties wait six months or more for the regular term of court, and lose all this time, before repair and re-rent can be made, or is a court of equity always open for such purposes as these? I invoke again the statute law as testimony. By section 4221 of the Code it is enacted: "All proceedings *ex parte*, or in the execution of the protective powers of chancery over trust estates, or the estate of the wards of chancery, may be presented to the court by petition only, and such other proceedings be had therein as the necessity of each cause shall demand."

By the next section, 4222, it is enacted: "A court of equity is always open, and hence the judge in vacation and at chambers, may receive and act upon such petitions, always transmitting the entire proceedings to the clerk to be entered on the minutes or other records of the court."

Thus it is manifest that our law does provide a speedy remedy in a court always open for the purpose, and before a judge at chambers with full power then and there to act on just such a petition as that on which chancellor Cole acted in this case for the preservation, as he adjudicated and concluded all issues thereon, of the trust estate and for the necessities of the *cestuis que trust;* and thus it appears that my venerable and distinguished friend knew what he was doing, and his jurisdictional power in law conferred by statute to do the act of authorizing the conveyance or mortgage deed which is the subject matter in litigation here.

In whom does the law repose chancery powers in a case like this? In the breast of an honest and incorruptible judge alone.

No jury is necessary; because none is provided for in that court of conscience which is "always open" in the language of section 4222 of the Code above cited. Juries

are only provided at the regular terms, and are only important under our system where facts are disputed ; but in a case like this, where one beneficiary was of age and agreed to the facts, and the other was approaching his majority and appeared by guardian *ad litem* and also agreed to them, no jury was necessary. For authority to appoint the guardian *ad litem* in such a case, see section 4224, in · the same chapter of the Code, where it is enacted : " If minors are interested, and they have no guardians, guardians *ad litem* must be appointed and notified before the cause proceeds."

The facts being all agreed to by both beneficiaries, I submit that the judge at chambers was just as competent and fully as able to decide the equitable principles applicable to those facts, as the same judge would have been had he been on the bench. In the one case he sat in a chair in his room and adjudicated and decreed ; in the other he would have been on the bench, and there he would have adjudicated and decreed the same thing. In both cases the facts before him would have been identical ; being the same man, his view of the law and equity applicable to them would be the same ; and in both cases he alone would have acted. I see no reason but much injustice in reversing the judgment of Judge Simmons that this mortgage debt authorized by this open court at chambers ought to be paid by this trust property ; and also seeing to my mind with equal clearness that the case of *Iverson, trustee, et al. vs. Saulsbury, trustee, et al.*, 65 *Ga.*, 724, virtually covers and controls this, I am left no alternative but, with entire respect for my colleagues, to dissent from their judgment, so that it may not be fixed as law beyond the power of a majority court to reverse it hereafter.