GUESS *et al. vs.* THE STONE MOUNTAIN GRANITE, ETC., COMPANY.

[This case was argued at the last term, and the decision reserved. Jackson, Chief Justice, being related to parties, did not preside.]

1. Where a bill had been filed to enjoin several common law actions, and in consequence they were tried with the bill, and both parties introduced testimony, the complainant in the bill was entitled to open and conclude the argument.

2. In an action for damages against a company which carried granite from its quarry to the main line of a railroad by means of a railroad of its own, which passed through the street of a village, and by reason of which it was alleged that injury resulted to the owners of property abutting on the street, danger of possible collision of animals and persons with the trains running on the track along the street, or of persons or animals being thereby frightened, were not elements of damages.

3. The judgment rendered in this case when formerly before this court (67 *Ga.*, 215) estopped the respondents from contesting the right of the company to use this street for the purposes of its road, as well as from calling in question the power of the town council to enter into a contract with the company, authorizing it.

4. The questions to be submitted to the jury on the last trial were, whether the property of the complaining parties had been injured by the company's use of the street, whether this injury was permanent, and if so, to what damages they were entitled. There was no error in restricting the inquiry to these points.

5. The actual damage sustained by the property owners in consequence of the building of the road and the use of the engine thereon, was what they were entitled to recover. If these damages did not exceed the increase in value of the property by reason of the company's improvements, they suffered no injury; and evidence to show such increase in value was admissible.

(*a.*) While it would have been better not to have referred to the improvement of property other than that of the parties in litigation, such reference did no injury.

February 19, 1884.

Municipal Corporations. Corporations. Practice in Superior Court. Damages. Railroads. Streets and Sidewalks. Before Judge HILLYER. DeKalb Superior Court. March Term, 1882.

Guess, Swift, Johnson, Winningham, and Nesbit and Smith, trustees, brought suits to the March term, 1881, of DeKalb superior court, against the Stone Mountain Granite and Railway Company, to recover damages for injuries to their property, alleged to be occasioned by the occupying and obstructing by the defendant of a public street in the town of Stone Mountain, known as Church street. On Septembr 1, 1881, the company filed their bill against the defendants, alleging, in brief, as follows: It was chartered in 1870, and by its charter was given " the right to construct and operate a railroad from the village of Stone Mountain to and around the Stone Mountain, and to connect the same with the Georgia Railroad Company's road, with the latter's consent." In order to do this, it was necessary to run the road along some of the streets of the village. On December 1, 1869, the board of town commissioners passed an ordinance allowing the company the right of way through and across Main street and any other street necessary to be passed over or crossed to construct a road from the Georgia Railroad to the quarries at the mountain. The company has complied with the condition of the ordinance, namely, the payment of a rent or tax of $25.00 per year. In 1870, the road was built from the line of the Georgia Railroad across Main street and the company's land, into and along Church street, for about four hundred and twenty-five feet to the land of the company, and thence to the base of the mountain. This was used for a number of years, and then its use was discontinued until 1880, when the road-bed was again repaired, the road relaid and again put in use. The company has improved Church street by building rock walls and macadamizing the same; and all damage to anyone is denied. A light engine is used for running at a slow speed, not exceeding five miles per hour. The prayer is that past, present and future damages, by reason of the use and occupancy of the street, be determined, and upon their payment, that suits be enjoined.

v 72-22

Defendants to the bill (plaintiffs in the common law actions) filed an answer and cross-bill, alleging, in brief, as follows: It was not necessary to run the track along the streets of the town, in order to connect with the Georgia Railroad. The ordinance confers no power to occupy Church street, and is a mere semblance of authority for a trespass. The present road is not like that used in 1870. The original road was on the side of the street, did not alter the grade of the street, used trestles and not embankments, and was operated by horse power and not by steam. The obstructions built in 1870 disappeared years ago. The road built in 1880 occupies the entire street, and at places most of the sidewalk; consists of deep cuts and high embankments; it occupies Church street for nine hundred feet, and causes damage to the property owners, by rendering the street almost impassable, making it unsafe for the vehicles and passengers and jarring the houses. The company uses an old and dilapidated engine, which casts soot, smoke and cinders upon the premises and into the houses of the adjoining property owners; runs at irregular intervals; is not under good control; is dangerous to passers, and makes loud and unpleasant noises. In consequence of these things, and also of the erection of a shed for this engine near the property of Guess, and the danger of fire from the sparks, etc., of the passing engine, they have been greatly damaged. Church street and adjacent cross streets were dedicated for the use and benefit of adjoining property owners, and the fee thereto is in them, subject to the right of the public to use them as highways and of the corporate authorities to repair them, etc. By reason of the change of grade, the property of defendants has been rendered inaccessible and otherwise damaged. By reason of the institution of these suits and a subsequent spell of dry weather, Church street is in better condition than when the suits were begun. The company has no charter power to construct and use the line through this street; and if it had, such power would be unconstitutional. The prayer

of the cross-bill was that the company be " enjoined from using or running a steam engine to propel cars or for other purposes," along Church street, and for general relief. By amendment to the cross-bill, damages were prayed as claimed in the common law suits.

The evidence was very voluminous and conflicting. In order to understand the points made, it will be necessary to give only the following summary:

The evidence on behalf of the complainant was, in brief, as follows: The company was chartered, obtained permission of the commissioners of Stone Mountain to build its road, built it, allowed it to fall into disuse, and subsequently rebuilt it, as stated in the bill. On the second building, the principal portion of the road did not alter the grade of the street more than a few inches. At one or two places, near the property of some of the plaintiffs in the common law suits, there was a grade of a few feet. In building the road, the company did not keep the street in bad repair longer than was necessary. They filled and macadamized the street, built rock walls, and rendered it much more passable than it was before. None of the property of the plaintiffs in the common law suits was rendered inaccessible. Taking into consideration the improvement of the street and the business done by the company, property owners on the street were benefited and not injured by the line. The engine used by the company was a second-hand wood burner, not suitable for general railway transportation, but reasonably suited for the purposes of the company. It did not cast more smoke, soot and cinders than an ordinary wood burner. There was sufficient room between the railroad and the sidewalk for vehicles to pass. When the engine was put up at night, about six P.M., there was some noise from the escaping steam, which lasted for probably half an hour, until the engine had cooled. Church street extended a short distance from the church, and thence the road passed over the land of complainant.

The evidence on behalf of the defendants in the bill was, in brief, as follows: The town of Stone Mountain was laid out by one Johnson, and Church street and its cross streets were laid out for the benefit of purchasers of property. They were worked out, and Church street extended to the base of the mountain. The original road was built, the obstructions disappeared, and a new road of the company was built, as stated in the answer and cross-bill. By reason of the cuts and grades in it, water has been backed upon the property of some of the defendants, and the property of others rendered almost inaccessible. The engine used by the company is an old secondhand machine, which throws clouds of smoke, soot and cinders upon the premises of these defendants, filling the houses at times, injuring the furniture, and rendering the atmosphere almost intolerable. There has been much less passing of vehicles upon this street since the construction of the road. The improvement of the street by the company has been, in considerable part, since the beginning of suits. The passing of the engine is very annoying, shaking the glasses, jarring the houses and rendering the road dangerous for the children of neighboring families. By reason of the grades, etc., the road was rendered very rough, and remained almost impassable until recently. The engine-house is near the property of Guess, one of these defendants, and when the engine is put up at night, it makes a mournful noise until the steam dies out, and this occurs again in the morning until the steam "gets up." The injury to the property of defendants was variously estimated at from twenty-five to fifty per cent of its value.

The jury found the following verdict: " We, the jury, find that the improvements made by Stone Mountain Granite Company, on the enhancement of property, covers the damages for the past, present and future, and all common law suits be enjoined, so long as said company keeps the street in good repair."

Decree was entered accordingly.

Defendants in the bill moved for a new trial on the following grounds:

(1), (2.) Because the verdict was contrary to law and evidence.

(3.) Because the court held that complainant in the bill had the right to open and conclude the case.

(4.) Because the court excluded the testimony of James R. Smith and other witnesses, by whom respondents offered to prove that the property on Church street was inaccessible with conveyances, not by reason of the condition of the street, but by reason of the danger to such vehicles, occupants of such vehicles and animals drawing them; not only from physical injury from danger of coming in contact with such engine and cars, but from apprehended danger, the result such as might and likely would occur from animals being frightened; and further, that the occupation of said street by the running of the engine and cars thereon was a virtual exclusion of its use by respondents, and the public, of it as a street or highway, with vehicles drawn by animals; and because the court further excluded the testimony of said witness and other witnesses by whom respondents offered to prove that the market value of the Guess, Swift and Johnson residences has been lessened, both in the purchase price and for rent as family residences, by reason of apprehended personal injury to the occupants, and especially to children, by the running of the locomotive and cars on said street.

[The court certified as follows: " As to the fourth ground, the court held that danger of collision of persons or of animals being frightened were not elements of damage in the eye of the law."]

(5.) Because the court permitted J. W. Tuggle and J. W. McCurry to testify that the occupation and use of said street by the complainant, with its engine and cars, had enhanced the value of the property in said town. The objection was that the testimony was irrelevant.

(6.) Because the court admitted, over objection of re-

spondents, the permission granted to complainants by com-
missioners of Stone Mountain to occupy said street with
its track.   The objection was that the commissioners had
no chartered right to grant said privilege, and said per-
mission did not authorize a change of grade in the street
or the use of the same by cars propelled by steam.

(7.) Because the court charged as follows : "If you be-
lieve from the evidence that the improvements made by
the complainants in said town have added to and en-
hanced the value of respondents' property, and other prop-
erty of the town, to an amount equal to the damage done
respondents' property, respondents cannot recover."

(8.) Because the court instructed the jury that if they
found that the engine used by complainants was unsafe,
or not reasonably such a one as would cause the least in-
jury or annoyance to the occupants of said street, they
could consider it as an additional element of damage to
the property of such as were damaged thereby.—The ob-
jection to this charge was stated as follows : "Respondents
praying that its use be enjoined, and so requesting of the
court in their argument to the jury."

(9.) Because the court instructed the jury that, if Guess
was damaged by the engine while in the engine-house,
with smoke, soot and noise, they would consider that as
an element of damage, and compensate for it.—Objection :
"Respondent, Guess, requesting that, if found to be a nuis-
ance, it should be abated or enjoined."

(10.) Because the court instructed the jury that, in case
of abandonment of the street by the municipal authorities
of the town of Stone Mountain, the fee would revert to
the adjoining land owners ; and they could look to the
evidence and see if such was the case ; that without the
consent of the abutters, the municipality could authorize
the use of the streets for gas pipes, street railroads and tele-
graph poles, and such would not be additional servitude ;
and they could look to the evidence and see if such use or

like use had been granted to complainant by the munici-pality.

(11.) Because the court refused the following charge : "The presumption of law is, that the street to its center belongs to the owner of the land on lots adjacent to such street on each side, and the burden is on the Granite Rail-way Company to show that it does not; and neither the leg-islature nor the municipal authorities could grant the right to said company to occupy said street with its road-bed, and run its engine upon it without compensation; and said land-owners are entitled to recover such damages as the evidence may show you that said property has been impaired by the occupation of said street."

(12.) Because the court instructed the jury that the occupation of said street by complainants as a railroad, to run cars thereon propelled by steam, was legal and author-ized by law.

[In connection with the tenth and twelfth grounds, the court certified as follows : "The court merely charged the principles laid down by the Supreme Court in this case; and further, that there would be no abandonment unless the new use was so inconsistent a dedication as to amount to an abandonment."]

The motion was overruled, and defendants excepted.

L. J. WINN, for plaintiff in error.

HOPKINS & GLENN, for defendant.

HALL, Justice.

1. This case affords no reason for a deviation from what should be considered as settled practice as to the right to open and conclude the argument, where a bill has been brought to enjoin several common law actions, and where they, in consequence, are tried with the bill. Where both parties introduce testimony, the complainant in the bill has the right to open and conclude the argument, as was held by this court in *Iverson vs. Saulsbury,* 65 *Ga.,* 724, 727.

2. There was no error in holding that the danger of possible collision of animals and persons with the trains running on the track of the railroad along the street, or of persons or animals being thereby frightened, were not elements of damages. Were this otherwise, it would be impossible to construct and use any railway over which cars were moved by steam in any place in the vicinity of a public highway or street, or along a portion of the same. The complaint that testimony was rejected going to show that this track was so constructed as virtually to exclude the respondents and the public from the use of the street by vehicles drawn by animals, does not appear to be well founded. The record shows much testimony *pro* and *con*, bearing on the point. The approval of this ground of the motion for a new trial was qualified by the presiding judge to this extent only.

3. When the bill was before this court, upon exceptions to the injunction restraining the common law suits, and asking that the same be tried together with the bill, we held that there was equity in the bill, and that the injunction was properly granted; and also that, whilst the complainant was a private corporation, and not a public carrier, organized for any great public purpose, like railroads from town to town, and could not exercise the right to take private property for public use, even with compensation, against the will of the owner of that property, yet it has the chartered right to run a road from Stone Mountain to the quarries at the mountain itself, to haul the granite to the Georgia Railroad, and to connect therewith by purchase or lease, or other leave given by the owners of the property along their route; and as the company shows the grant of the use of the street in question by the town council of the town of Stone Mountain, it was not to be treated as a mere interloper or trespasser, against which, as a suitor, a court of equity would close its doors. 67 *Ga.*, 215, 216, 217. Why was it not a trespasser, if the authorities of the town of Stone Mountain had no power to treat with it

for the use of its streets, and to grant it that right, in consideration of an annual sum agreed to be paid and of an obligation to improve and keep in repair the street so used ? It is clear to us, if no such right existed, the company would necessarily be a trespasser in making such use of the street, and, as a wrong-doer with unclean hands, could not gain entrance into a court of equity. The respondents are estopped by this judgment from contesting the right of the company, therefore, to use this street for the pur· poses of their road, as well as from calling in question the power of the town council to enter into a contract with the company authorizing it. This view of the matter disposes of several questions insisted upon with earnestness and ingenuity by the able counsel for the plaintiffs in error ; the discussion of these is foreclosed by the prior adjudication of this court in this very case. We differ from our learned brother as to the extent of that decision, and think that it determined something more than that there was no abuse of discretion in directing the injunction to issue according to the prayer of complainant's bill.

4. The injunction sought by the cross-bill was refused, and the course pursued by the judge, in that respect, was commended as "legal, wise and just." The question as to the mode of running the cars, as then shown by the answer and affidavits of the defendants to the complainants' bill, was left open for future regulation by the final decree of the court, and if the evidence on the trial required it, the company might be constrained thereby to improve that mode, and held liable for past as well as future damages, if the property lying on the street should appear to be permanently injured. The questions then to be submitted to the jury on this trial were, whether the property of respondents had been injured by the company's use of the street, and whether this injury was permanent, and if so, to what damages the parties were entitled. These were the points submitted to the jury on the trial of the case, and the court did not err in restricting the inquiry to these

points, and instructing the jury, as complained of in the 8th and 9th grounds of the motion for a new trial, "If they found that the engine used by complainants was unsafe, or not reasonably such a one as would cause the least injury or annoyance to the occupants of said street, they could consider it an additional element of damage to the property of such as were damaged thereby," or "that if the defendant, Guess, was damaged by the engine, while in the engine-house, with smoke, soot and noise, they would consider that as an element of damage and compensate for it." The court could not, as it seems to us, make this a ground, as was insisted, for enjoining the use of the engine and track. This object would have been better secured by the award of damages for the past, as well as the future, if the evidence warranted such a finding. The rights of both parties would have been thus secured. The plaintiffs in the several common law suits would have gotten what they sought thereby, and there would have been no such interference with the franchises of the company as would have deprived it of their proper and legitimate use.

5. The actual damage sustained by the parties, in consequence of the building of the road and the use of the engine thereon, was what they were entitled to recover in their several suits. If these damages did not exceed the increased value of the property by reason of the company's improvements thereon, then they suffered no injury. *City of Atlanta vs. Green*, 67 *Ga.*, 386; *Moore vs. City of Atlanta*, 70 *Ga.*, 611. Consequently, there was no error, either in the admission of testimony bearing upon this question, or in giving this principle in charge. Doubtless it would have been better to have omitted from the charge all reference to the improvement of other property than that of the parties. The inadvertent use of these terms, "and other property of the town," we are satisfied, did no injury to the parties complaining. When taken in connection with the context, it is evident that the jury were not instructed to make them account for benefits to other property than

their own; and that the jury were not misled by the charge is quite certain, for they found that "the enhanced value of the property covered the damages for the past, present and future, and that the common law suits be enjoined, so long as the company kept the streets in good repair."

All the other special grounds of the motion for a new trial have been disposed of by what we have heretofore said, and by what was decided when the case was before the court on a former occasion. The verdict, if not required, was certainly sustained by the evidence.

There was no material error, either in the charge or the rulings of the court, to which exception was taken.

Judgment affirmed.