Saulsbury, Respess & Company vs. Iverson et al.

SAULSBURY, RESPESS & COMPANY *vs.* IVERSON *et al.*

1. It has been held by a majority decision of this court in this case (68 *Ga.*, 790) that, while a chancellor at chambers, on full notice to all parties, may order a sale of trust property, he has no power to grant authority to a trustee to mortgage a trust estate, and a mortgage so given will not bind the *cestuis que trust*. Although the present bench disapprove of the majority decision stated, it is binding in this case.
2. Where a debt was created in 1866, and in 1884 it was sought by cross-bill to subject a trust estate, on the ground that the debt was created for the benefit thereof, the demand was stale and barred by the statute of limitations.

November 11, 1884.

Trusts. Sales. Mortgages. *Res Adjudicata.* Practice in Supreme Court. Life Estate. Liens. Before Judge SIMMONS. Bibb Superior Court. April Term, 1884.

Juliet A. Iverson and James S. Iverson filed their bill in April, 1880, against Saulsbury, Respess & Company, to enjoin the enforcement of a mortgage *fi. fa.* and to set aside the mortgage. The principal grounds on which the bill was based were, that the trustee of an estate, of which the complainants were *cestuis que trust*, obtained an order at chambers allowing him to mortgage the trust property ; and that, though he alleged that the debt was created for the benefit of the trust estate, it was, in fact, his own individual debt. The case will be found reported in 68 *Ga.*, 790. On the last trial, the verdict was for the complainants.

Defendants moved for a new trial, which was refused, and they excepted.

GUSTIN & HALL; BACON & RUTHERFORD; E. F. BEST, for plaintiffs in error.

LYON & GRESHAM, for defendants.

BLANDFORD, Justice.

When this case was here, as reported in 68 *Ga.*, 790, a majority of this court held, " While a chancellor at chambers, on full notice to all parties, may order a sale of trust property, he has no power to grant authority to a trustee to mortgage a trust estate, and a mortgage so given will not bind the *cestuis que trust*."* When this case was returned to the count below, the plaintiffs in error, who were the defendants to the bill, filed a cross-bill, in which they alleged that Mrs. Juliet Iverson, who was one of the *cestuis que trust*, was the life tenant in the property mortgaged, and that she was *sui juris* as to this property mortgaged, and that, as she had consented to the bill filed by the trustee and consented to the order of the chancellor authorizing the trustee to mortgage the trust property, she was bound thereby, and that the mortgage should be foreclosed so far as her interest in the property extends. The court below refused to allow this. It is clear that if Mrs. Iverson owned a life estate in this property, she might charge the same with any debt or obligation of her own, and that she might mortgage the same for sued debts; but in the case before us, it does not appear that she consented that her trustee should mortgage her separate life estate in the property, but the consent was that the whole property, including her life estate and the remainder interest of her children in the property, might be mortgaged to pay the debt of plaintiffs in error; she might have thus consented

*The principle ruled in 68 *Ga.*, 790, has been since overruled in *Weems, trustee, vs. Coker*, 70 *Ga.*, 746. (Rep.)

and been unwilling that her separate interest in the property should have been mortgaged to pay this debt; besides, the decision referred to declares that the mortgage given does not bind her. The bill in the case referred to in 68 *Ga.*, 790, was specially demurred to, on the ground that Mrs. Iverson could mortgage this property, and that the mortgage was good as to her, and this court then held the demurrer was bad. Whether this decision be right or wrong, it is the law of this case; it is *res adjudicata.*

Plaintiffs further insist that plaintiffs' debt was created for the benefit of the trust estate, and they ask that it be decreed to be a charge on the same; but it is replied that the debt was created in 1866, and the cross-bill was not filed until 1884, and that the same is stale and became barred by the statute of limitations. This is certainly a good reply to the cross-bill, and while we unanimously disapprove of the decision which is referred to as made in this case, our obligation to the law of this case, as rendered in that decision, obliges us to affirm the decision and judgment of the court below.

Judgment affirmed.