## SPARKS *vs.* ROBERTS.

| 65 | 571 |
| 95 | 780 |
| 65 | 571 |
| 122 | 78 |

1. Exception to an entire charge will not be considered unless the charge is wrong as a whole.

2. Where the residuary clause of a will provided that, after paying debts, etc., the remainder of testator's land should be divided among certain named legatees, title remained in the executors for the purpose of executing the will; and if prescription began to run against the testator, it continued to run against executors. Nor would it be affected by the minority of one of the residuary legatees, until something was done by which the title passed to her.

3. After prescription began to run against a *feme sole*, her voluntary marriage would not exempt her from the operation of the statute.

4. The married woman's act of 1866, as well as the constitution of 1868 and the act of 1872, removed the disability of married women as to bringing suit.

v 65—37

Husband and wife. Prescription. Title. Minors. Before Judge HOOD. Miller Superior Court. October Term, 1879.

Reported in the decision.

H. C. SHEFFIELD ; D. A. VASON; BROYLES & JONES; · C. B. WOOTEN, for plaintiff in error.

I. A. BUSH, by JACKSON & LUMPKIN, for defendant.

JACKSON, Chief Justice.

This is an action brought by Mrs. Sparks in the old form of ejectment, whereby the demise is laid in her name in the year 1870, and the action is brought in 1879. She claims title from the will of her grandfather, who died twenty-ninth day of September, 1853, and the will was admitted to probate in the next year, 1854. Jones, her grandfather, held a regular chain of title from the grantee of the state, and the defendant held under the same grantee, but under a younger deed, and claims title by prescription, having been in adverse possession of the land ever since the year 1852. Jones' title from the grantee runs back in regular chain to February, 1826, and Roberts', the defendant's, to December of the same year. Demises are also laid in the names of two trustees for Mrs. Sparks, named in her grandfather's will, and in the names of the executors of that will.

The important facts on which the legal questions made in the cause arise, are that the defendant's possession began under regular deed for value in 1852, two years before Jones, the testator died, but during the minority of his granddaughter, Mrs. Sparks—that she became of age some month or two before her marriage—and has been under coverture ever since that time. By the will this lot is not mentioned or devised at all, but by the third item of the codicil, a witness for plaintiff, being one of the

sons and executors of the testator, testified that the testator intended it to go to this granddaughter—that item of the codicil, however, leaves all his lands outside of Burke, Emanuel and Washington counties, to be divided equally between testator's children and this grandchild, after enough has been sold to pay his debts; if another fund should prove insufficient.

1. Exception is made to the entire charge of the court, but no error is specified therein either in the motion for a new trial or in the assignment of errors in the bill of exceptions. Therefore that exception, being too general, cannot be considered under repeated rulings.

2. So that the sole question is this: Is the verdict contrary to the law and the evidence—that verdict being in favor of the defendant?

If the plaintiff showed title out of Jones in herself through the will, it would give her the older and better title unless she lost it by the lapse of time, and Roberts', the defendant's, adverse possession.

It is not clearly established that the title went into her out of the testator by his will. Debts had to be paid and a division made and shares equalized, and the record does not show that this has been done, or when or how done, at all satisfactorily. So that we could not say that the verdict was against the law and the evidence on this very threshold of the cause, with such a long, honest and adverse possession in the defendant.

But the statute began to run in the lifetime of the testator, and it was the duty of his executors to have reduced the land to possession in order to divide it with the other lands under the terms of the will and codicil. Until some act was done which gave this infant the title, her disability certainly could not save the land from the prescriptive title acquired by the defendant—the title being in the executors to sell and pay debts in certain contingencies, and then to divide among legatees. They seem to have given it in for taxes and paid taxes on it.

3. Again, if the title passed into her at the death of the testator, she became of age before her marriage, and thereby being sole and *sui juris*, she could sue, and she could not claim the exemption under §2926 of the Code, because she voluntarily caused the disability after the statute began to run against her. Code, §2927; 48 *Ga.*, 329.

4. Again, if her coverture did exempt her from the operation of the prescriptive statute until 1866, when the act was passed making her a *feme sole* as to her separate estate, that act, to all intents and purposes, as well as the constitution of 1868, removed the disability and gave her the legal right to sue.

It is true that the act of 1872 was passed, conferring that power explicitly upon married women, but was it not virtually given before by the act of 1866 and the constitution of 1868? It would seem so.

Again, trustees were appointed by the will to act for Mrs. Sparks in respect to the property left her in the will, and whilst the only witness, Mr. Jones, does say that there was no formal acceptance of the trust, yet he and the others did so far act as to bring suit for the land, and afterwards to dismiss it, according to his own testimony; and the jury might have found that the trust was virtually accepted. If so, the trustees are barred and the bar attaches to the *cestui que trust*.

In view of all the facts, we are quite clear that the verdict for the defendant is right under the law and evidence disclosed in this very obscure, badly written and unsatisfactory record, and that it must be upheld.

Judgment affirmed.