SCHLEY, executor, *et al. vs.* BROWN.

1. Where the same person was both executor and testamentary trustee under a will, but the title to certain property therein devised was placed in him as trustee, in a suit to recover realty so left, a demise in the name of the executor was not available.

(*a.*) The will in this case construed.

2. Where property was held in trust for testator's daughter during her life, the trustees being required to leave her in possession and permit her to enjoy the entire rents, issues and profits for her own use and support, and after her death to apply the entire income to the support of her children named in the will, or such of them as might survive her, so long as each of them lived, with contingent remainder to the children of the grandchildren of testator, until the interest of the successive *cestuis que vie* were fully satisfied, the contingency had not happened upon which the title could pass to these children of grandchildren, and no recovery could be had on a demise in their names.

3. The sale of such trust property with the consent of testator's daughter and her children, and under order of the chancellor, vested a perfect title in the purchaser.

(*a.*) The purchaser, having bought *bona fide* and for a valuable consideration, will be protected, although subsequent events may disclose that the sale and re-investment were mistakes of judgment. Courts of law and equity have gone far to protect such purchasers, even when they held under doubtful or irregular sales, or defective or incorrect judgments of courts having jurisdiction of the subject-matter.

4. It was not necessary for such of the contingent remaindermen (children of testator's grandchildren) as were in life at the time, to have been made parties to the proceeding to obtain a judgment allowing the sale, nor is the sale rendered invalid because this was not done. In such cases, not only the holder of the first estate should be before the court, but also the intermediate remaindermen for life should be parties. But when the person who is to take the remainder is not ascertained and the remainder is contingent, it is sufficient to have before the court the trustees to support the contingent remainder, and the persons *in esse* having title to the vested estates.

(*a.*) This case is distinguished from the case of the *City Council of Augusta vs. Radcliffe*, 66 *Ga.*, 469. In that case a power of sale was given upon certain terms, which were not complied with, and the title did not pass.

April 3, 1883.

Wills. Estates. Trusts. Title. Administrators and Executors. Remainders. Before Judge WILLIS. Muscogee Superior Court. May Term, 1882.

Reported in the decision.

BLANDFORD & GARRARD, for plaintiffs in error.

R. J. MOSES; PEABODY & BRANNON, for defendant.

HALL, Justice.

This suit was brought upon the several demises of William Schley, executor of the last will and testament of Governor William Schley; also of William Schley, as trustee under and by virtue of the provisions of said will; and lastly upon the demise of Matilda Louisa Brown, Amelia C. Brown, Sarah D. Brown, Robert E. Brown, Marie S. Brown, and Elizabeth Brown, John D. Smith, Richard P. Smith and Margaret Corbin, against J. Rhodes Brown, as tenant in possession of certain lots in the city of Columbus. The defendant appeared and pleaded the general issue, and under that plea set up, with his other defences, title by prescription to the premises in dispute. Both parties claimed under the will of Governor Schley, which was executed on the third day of April, 1858, proved in chambers on the 24th day of November, 1858, and admitted to record at the December term, 1858, of the court of ordinary of Richmond county. The case was tried by consent, upon an agreed statement of facts, by the judge without the intervention of a jury, and after hearing the evidence thus agreed upon, the court gave judgment in favor of the defendant; and the plaintiffs, alleging error in that judgment, excepted thereto, and brought the case by writ of error to this court.

The following facts were agreed upon, viz.: That the premises in dispute were the property of Governor William Schley at the time of his death.

That Anna Maria Davis died on the 21st day of April, 1879. That Richard Davis died unmarried and without children before his mother, Anna Maria Davis. That Mrs. Isabella B. Smith and Mrs. Sarah N. Brown, formerly Davis, died before their mother, Anna Maria Davis. Mrs. Charlotte Ridenhour, formerly Davis, is still living.

That the lessors, Browns, mentioned in the declaration, are the children of Mrs. Sarah N. Brown, deceased, and the lessors, Smiths, and Mrs. Corbin, are the children of Mrs. Isabella B. Smith, deceased.

The plaintiffs then tendered and read in evidence a duly exemplified copy of the last will and testament of the said William Schley, which contained, among others, the following bequests, which are alone material to the questions here made.

"*Thirdly*—I give and bequeath unto my nephews, James H. Maxwell and William Schley, Jr., Esq., both of the county and state aforesaid, (as trustees for my daughter, Anna Maria Davis, and such of her children as are hereinafter named), whom I do nominate and constitute such, and to their heirs, executors, administrators and assigns, the following property, real and personal, to-wit: Thirteen negroes, viz., Robert, Polly, Henry, Jane, Julia, Kizzy, Mary, Tom, Flora, Frances, Bettie, Abner and America, as also the increase of the females which they may heretofore have had, or may hereafter have; also sundry household and kitchen furniture, silver and plated ware, and other articles, which said negroes, furniture, silver and plated ware, and other articles, I purchased from Mr. John Fontaine and loaned to my said daughter, a schedule of which may be seen by reference to the bill of sale made to me by Mr. Fontaine, which is of record in the clerk's office in the city of Columbus, as also the other papers in relation to the purchase and loan, and also in the receipt given to me by the said Anna Maria Davis, and her husband, Arthur B. Davis, who was then in life, for the said property as a loan from me, and which said property is now in possession of my said daughter (except a part of the furniture, sold by A. B. Davis in his life-time to Mr. John Woolfolk, which sale I hereby sanction and confirm, and except also such of the said furniture as was consumed in the great fire in Columbus in the year 1846, which destroyed her house, and except also two negroes, Flora and ———, which she sold, and which sale I do also confirm). I also give and bequeath unto the said James H. Maxwell and William Schley, Jr., Esq., trustees as aforesaid, all my houses and lots in the city of Columbus, Georgia, known as the "Old

Columbus Bank lots," where my said daughter resided at the time of said fire, which destroyed that part of the city, which said property was conveyed to me by the sheriff of Muscogee county, and has been rebuilt since the fire with three store-houses. The said premises include an alley on the back part of said lots and stores, and which said lots and houses are now in the possession of my said daughter, or are rented by her. I also give and bequeath unto the said James H. Maxwell and William Schley, Jr., Esq., as trustees as aforesaid, the sum of ten thousand dollars in cash, to be invested by them in safe and profitable stocks or other property and securities, which will yield a fair and good income.

To have and to hold all and singular the said property, real and personal, to them, the said James H. Maxwell and William Schley, Jr., Esq., and to their heirs, executors, administrators and assigns forever in fee simple. But upon this special trust and confidence nevertheless, that is to say, that they, the said James H. Maxwell and William Schley, Jr., Esq., and their executors, administrators and assigns, shall permit and suffer the said Anna Maria Davis to have, hold, receive and keep possession of all and singular the said estate, real and personal, and to receive, enjoy and dispose of all the rents, income, dividends and profits of the same, in such way and manner as she may think fit and proper, for and during the full term of her natural life, and no longer. Provided, nevertheless, that no part of said property shall be carried or conveyed beyond the limits of the State of Georgia, nor used or expended for the said Anna Maria Davis—the true interest(?), object and meaning of this conveyance being to secure a support for her during her life from the rents, issues, profits and income of the said property, without in anywise lessening or impairing the principal.

And from and after the death of the said Anna Maria Davis, then upon this further trust and confidence, that is to say, that they, the said James H. Maxwell and William Schley, Jr., Esq., and their heirs, executors, administrators and assigns shall have, keep and hold possession of all and singular the said property, real and personal, as trustees for Isabella B. Smith, the wife of John Smith, Sarah N. Davis, Charlotte Davis and Richard Henry Davis, my grandchildren, and being four of the children of my daughter, Anna Maria Davis, and pay over to them, share and share alike, the said income, rents, issues and profits which may arise or accrue from the said property, for and during the full term of their natural lives, and in the event of the death of either, or all of the said four children, then and in such case the said property, real and personal, shall be divided into equal parts or shares, and one part or share conveyed by the said trustees to the child or children (if any) of such child or children (my said four grandchildren) so having died, and entirely freed and discharged from any further trust or confidence whatever.

But if either of my said four grandchildren should depart this life without leaving behind them a child or children living at the time of the death of such grandchild, then and in such case the part or share which would fall to such grandchild, shall merge in the general property and pass to the surviving brother and sister or sisters of the said four grandchildren, as the case may be ; and in the event of the death of all my said four grandchildren, without leaving behind them a child or children living at the time of ·such death, then it is my will that all the said property shall be divided equally, share and share alike, among the children of my son, Dr. William K. Schley, freed and discharged from any further trust or confidence whatever.

*Fourthly*—I give and bequeath unto my said nephews, James H. Maxwell and William Schley, Jr., Esq., and their heirs, executors, administrators and assigns (as trustees for my son, Dr. William K. Schley, and his children, now in life, and such as may be born to him hereafter), the following property, real and personal, to-wit : My undivided half part of certain lots of land, lying in the state of Mississippi, which were conveyed by John Schley, Esq., to George Schley, Esq., and myself, and which are now held by us in common, the quantity of acres being originally thirty-two hundred, some of which, however, has been sold by our agent, Mr. Craft, one-half part of what remains being mine. Also one negro woman named Emily, now in the possession of my said son, William K. Schley. The above named land I do hereby authorize and empower the said George Schley, Esq., to sell when he may be able to do so, and to pay over the net proceeds thereof to the said James H. Maxwell and William Schley, Jr., Esq., trustees as aforesaid, to be by them invested in bank or other safe and profitable stocks, or in negroes, to be under and subject to the same trust and confidence as are hereinafter mentioned and declared in regard to the other property conveyed in and by this item of my will.

" I also give and bequeath to the said trustees, their heirs, executors, administrators and assigns, the sum of ten thousand dollars in cash, to be by them invested in safe and profitable stocks, or other property and securities, which will yield a good and fair income.

" To have and to hold all and singular the said property, real and personal, to them, the said James H. Maxwell and William Schley, Jr., Esq., and to their heirs, executors, administrators and assigns, forever in fee simple. But upon this special trust and confidence nevertheless, that is to say, that they, the said trustees, their heirs, executors, administrators and assigns, shall permit and suffer the said Dr William K. Schley to have, hold, and keep possession of all and singular the said estate, real and personal, and to have, hold, receive and enjoy, and dispose of all the rents, issues, dividends, profits and income of the same, in such manner and way as he may think fit and proper, for and during the full term of his natural life,

and no longer. Provided, nevertheless, that no part of the said property shall be carried or conveyed beyond the limits of the state of Georgia, nor used or expended to pay any debt or debts now due, or which may be hereafter due, contracted by the said Dr. William K. Schley; the true object and intent of this conveyance being to secure a support for him during his life-time from the rents, issues, profits, dividends and income of the said property, so far as they may go, without in any way lessening or impairing the principal.

"And from and after the death of the said William K. Schley, then upon this further trust and confidence, that is to say, that they, the said James H. Maxwell and William Schley, Jr., Esq., and their executors, administrators and assigns shall have, hold and keep possession of all and singular the said property, real and personal, as trustees for Ann P. Schley, William Schley, Charlotte T. Schley and Sarah Schley, the children of the said Dr. William K. Schley, and for such other children as may hereafter be born to the said Dr. William K. Schley, and pay over to them, share and share alike, the said income, rents, issues and profits which may arise or accrue from the said property for and during the full term of their natural lives. And in the event of the death of either or all of the said children of the said William K. Schley, then and in that case the said property, real and personal, shall be divided into as many parts or shares as there were children in life at the time of the death of the said Dr. William K. Schley, and one part or share conveyed in fee simple, and freed and discharged from any further trust and confidence, to the child or children (if any) of such child or children of the said Dr. William K. Schley so having died. But if either of my said grandchildren, the children of my said son, William K. Schley, should depart this life without leaving behind him or her a child or children living at the time of the death of such grandchild, then and in such case the part or share which would fall to such grandchild shall merge in the general property and pass to the surviving brothers and sisters of such grandchild so dying without leaving a child or children. And in the event of the death of all the children of the said Dr. William K. Schley without leaving behind them a child or children living at the time of such deaths, then it is my will that all the said property shall be divided, share and share alike, among and between the said four children of Anna Maria Davis, to-wit: Sarah N. Davis, Ann J. B. Smith, Richard Henry Davis and Charlotte Davis, freed and discharged from any further trust or confidence whatever.

"I have heretofore, at different times, given my said son, William K. Schely, about the amount of ten thousand dollars, for a part of which I hold his notes, and which said notes I do hereby cancel and direct to be delivered up to him. But the above stated Mississippi lands were paid for by him, so that the actual amount he received did not exceed eight thousand dollars. I have heretofore given to my said son, Wm. K.

Schley, a negro boy named Cornelius, which boy he has sold, and which sale I do hereby ratify and confirm. The said boy, as also the said woman, Emily, above named, were mortgaged by the said William K. Schley, to Philip Schley, Esq., which said mortgage has been assigned to me, for which I paid the said Philip T. Schley the sum of fifteen hundred dollars. The property has never been changed by foreclosure and sale of the said negroes, and, therefore, I desire my executors to do so.

I give and bequeath to my said son, William K. Schley, my gold watch. * * *

"*Seventhly*—I give and bequeath unto my said nephews, James H. Maxwell and William Schley, Jr., Esq., the remainder in fee simple, after the termination of the life estate granted to my wife in and by the second item of this, my will, of my lot and houses on the northwest corner of Broad and Campbell streets, in the city of Augusta, where I now reside, and which I purchased from Mr. Lambert Hopkins; that is to say, I give and bequeath the said lot and houses to the said James H. Maxwell, and William Schley, Jr., Esq., as trustees as aforesaid, in fee simple, subject only to the said life estate hereinbefore given to my wife by the said second item of this, my will. I also give and bequeath unto the said James H. Maxwell and William Schley, Jr., Esq., as trustees aforesaid, all and singular, the rest and residue of my estate, real and personal, which may remain after payment of my debts and the legacies hereinbefore mentioned, and which may arise or accrue from any source or cause whatever.

"To have and to hold all and singular the said remainder, after the death of my wife; and all the said residue of my property, real and personal, to them, the said James H. Maxwell and William Schley, Jr., Esq., and to their heirs, executors, administrators and assigns, as trustees aforesaid, forever in fee simple. But upon this special trust and confidence, nevertheless, that is to say, that they, the said James H. Maxwell and William Schley, Jr., Esq., and their heirs, executors, administrators and assigns, shall have, hold and keep possession of the same and every part thereof, and invest the said residue in productive stocks or other property which will yield a fair income, and receive and collect the rents, issues, profits and income from time to time, and pay over the same to my daughter, Anna Maria Davis, and my son, Dr. William K. Schley, share and share alike; that is to say, one-half of the said income to each of them, for and during the full term of their natural lives. And in the event of the death of either of them, then one-half of the said income of the said property, which would have gone to the deceased child, shall be paid over (if it should be my daughter who should first depart this life), to her four children, Isabella B. Smith (the wife of John Smith), for her sole and separate use, free from the control of the said John Smith, Sarah N. Davis, Charlotte N. Davis, and Richard Henry Davis. And if it

should be my son who departs this life first, then the one-half of the said income shall be paid over to his children, share and share alike.

"And when both my said children, Anna Maria and William K., shall have departed this life, then it is my will and desire that all the property mentioned in this item of my will shall be equally divided among and between the said four children of my said daughter, Anna Maria Davis, and all the children of my said son, William K. Schley, share and share alike, and freed and discharged from any further trust or confidence whatever.

"But the part or share that may fall or may be allotted to my grand-daughter, Isabella B. Smith, I do hereby declare to be for her sole and separate use, entirely free from the control of her husband, and not subject in any way for the payment of his debts.

"*Eighthly*—I do hereby order and direct that none of the property hereinbefore conveyed in trust, shall be used or applied to the payment of any debts now due, or that may hereafter be contracted by my said daughter, Anna Maria Davis, or my sons, Dr. William K. Schley or George H. Schley; and, further, that the said property shall not be sold or otherwise disposed of, except to be reinvested in better or more profitable stocks or property, and conveyed to the same trusts and for the same uses and intents as was the said property thus sold; even though a court of equity should be disposed to do so, by the wish and consent of all the parties interested, and of the trustees, as, to the disgrace of these courts, both in England and the United States, they have often done in cases of wills and marriage settlements, thereby defeating the will and true intent of the testator, and of the victimized wife, in cases of marriage settlements.

"A portion of my property consists of sixteen $500.00 bonds of the Montgomery and West Point Railroad, which said bonds are on deposit in the Branch Bank of the State of Georgia, of Augusta; ten of which said bonds are given to my wife in and by the second item of this, my will, and the other six (6) bonds will form a part of my estate to be divided with my other property according to the provisions of this, my will, etc."

William Schley alone proved the will, and was qualified as executor. It was admitted that the lessors, Smiths and Mrs. Corbin, were now of full age and were living in the year 1862. Here the plaintiffs closed their case.

Defendants tendered and read in evidence to the court, the record of a petition and decree, and a deed of conveyance thereunder, to J. Rhodes Browne, a copy of which record and deed is as follows:

" THE STATE OF GEORGIA—*Muscogee County.*

" *To the Hon. E. H. Worrill, Judge of the Superior Court in and for the Chattahoochee Circuit, in said State:*

"The petition of William Schley respectfully shows that heretofore, to-wit: on the third day of April, 1858, the Hon. William Schley, then residing in the county of Richmond, in the state aforesaid, and in life, but since deceased, made, published and declared his last will and testament, which has been duly proved and recorded, by which, among other bequests and devises in said will contained, he gave and bequeathed to his nephews, James H. Maxwell and William Schley, both of said county of Richmond, as trustees for his daughter, Mrs. Anna Maria Davis, and such of her children as are in said will named, to-wit: Isabella B. Smith (the wife of John Smith), Sarah Ann Davis, Charlotte Davis, and Richard Henry Davis, testator's grandchildren, and being four of the children of his said daughter, Anna Maria Davis, among other property, the following houses and lots, to-wit: All his houses and lots in the city of Columbus, Ga., known as the "Old Columbus Bank lots," where his said daughter, Mrs. Davis, resided at the time of the fire which destroyed that part of the city of Columbus; which said property was conveyed to said testator by the sheriff of Muscogee county, and has been rebuilt since the fire with three store-rooms. The said premises include an alley on the back part of said lots and stores; which said lots and houses are now in the possession of my said daughter, or are rented out by her. And your petitioner hereto attaches a correct exhibit from said will, showing the various provisions made by the said testator for the benefit and support of his said daughter and her four children above named, which is made a part of the petition. And he also herewith exhibits to your Honor a full and complete certified copy of the said last will of the said testator, that your Honor may be fully informed of the purposes and objects of the testator in creating the trust estate referred to. And the petition shows to your Honor that the rents arising from the said three stores on Broad street were relied upon, and have been the main source for the support and maintenance of Mrs. Davis and her family. But your petitioner shows that such has been the condition and state of the times for two or three years past that the said three store-houses are not in demand, and if rented at all, it can be done only for a month or two at a time, or if for longer time, that the rents amount to but little. Your petitioner shows to your Honor that the rents annually arising from said three store-houses amount only to the sum of about one thousand dollars, and that, after paying the state, county and city taxes, together with insurance and necessary repairs, and to which may now be added Confederate States tax, the whole rents will be absorbed and nothing will be left for the support of Mrs. Davis and her family. How long this state

of things is to continue it is impossible to foretell, but one thing is certain, that it is absolutely necessary that some immediate and reliable provision must be made for the support of this family, who are made the peculiar objects of solicitude of the testator in his said last will. Your petitioner refers to the eighth item in the will of the testator, in which he contemplates the possibility of a necessity for a change of the property devised by him in trust for the benefit of his children, and while he manifests all that care and caution for which he was remarkable, by prohibiting the sale or disposition of said property, he makes the exception that it may be done to be reinvested in better or more profitable stocks or property and conveyed to the same trusts, and for the same uses and intents as was the property thus sold. Your petitioner further shows to your Honor, that he is informed and believes that the favorable location of said three stores makes them desirable to capitalists as a permanent investment of their surplus money, and judging from other sales which have been made of like property in the city of Columbus, it is believed that said stores will bring at public auction sale, twelve or fifteen thousand dollars each, and perhaps more. If this sum can be obtained for said property, and the proceeds invested in state or Confederate States bonds, bearing interest, it is believed that it will afford a more ample, certain and permanent provision free from taxes and insurance, and under whatever exigency may occur in our national affairs it is believed that the investment in government bonds will be as safe as any other property.

Your petitioner, therefore, believing it to be best to sell the said property, and having the consent of all parties interested, prays that your Honor may grant an order authorizing the sale of said three stores at auction sale, and that your petitioner may be authorized to invest the proceeds arising from the sale of the same in state or Confederate States bonds, secured to the same trusts and for the same uses and intents as is the said property by said will. And your petitioner shows that he is the only acting executor of said will, and trustee for Mrs. Anna M. Davis, the other appointed executor and trustee, James H. Maxwell, having declined to qualify as executor or to act as trustee.            WILLIAM SCHLEY."

"GEORGIA—*Muscogee County.*

Before me, Wiley Williams, a notary public in and for said county, personally appeared William S. Davis, who, being duly sworn, deposes and says, that the facts set forth and contained in the foregoing petition are, to the best of his knowledge and belief, true.

WM. S. DAVIS.

Sworn to and subscribed before me this the 20th day of August, 1863.            WILEY WILLIAMS,
Notary Public Muscogee County, Georgia."

" GEORGIA—*Muscogee County.*

Before me, John R. Ivey, a justice of the inferior court in and for said county, personally appeared Mrs. Anna Maria Davis, who, being duly sworn, deposes and says, that she is the daughter of the late Hon. William Schley, late of the county of Richmond, in said state, for whose benefit and the benefit of her children her said father created the trust estate mentioned in his last will, as is shown by said will; that the three brick stores in Columbus, which was devised in said will to the use of deponent and her children mentioned in said will, has been mainly relied upon by her for a support, and with the aid of which she has been able to maintain herself and children. That for two years past the rents of said houses have so depreciated that after the payment of state, county and city taxes, together with insurance and repairs, nothing of the rents remained, and the same has ceased to be a source of revenue to her. That the condition of her landed property is such that the rents of said houses at good prices, as in former times, were required to afford to her and her children a competent support; this having failed, it will be absolutely necessary to sell a part of the *corpus* of her trust estate for her support and the support of her children, which was not anticipated by her father in the provision made for her in his said will. In this exigency, she has been advised by her friends that it is best to sell said three store-houses in Columbus, and invest the proceeds arising from the sale of the same in interest-paying bonds of the state or Confederate States, and deponent says she concurs in this suggestion, and prays that the petition of her trustee, William Schley, Esq., may be granted. Deponent further says, that three of her said children have, in their own names, consented to said change of property. That she, as guardian for Richard Davis, who is of imbecile mind, and for whom she has a peculiar care and solicitude, has consented to said sale; so that all parties in interest have assented to said sale.

                                                    ANN M. DAVIS.

Sworn to and subscribed before me on this, the 20th day of August, 1863.                              JOHN R. IVEY, J. I. C."

" GEORGIA—MUSCOGEE COUNTY.

Before me, Wiley Williams, a notary public in and for said county, personally appeared R. R. Goetchius and John J. McKendree, who, being duly sworn, depose and say, that they are well acquainted with the three store-houses in Columbus, referred to in the foregoing petition; that they consider the property valuable for mercantile purposes in ordinary times, but owing to the present condition of our national affairs, there is but little demand for store-houses, and they know that the rents arising from said stores are merely nominal and uncertain at any price. They believe that the taxes, insurance and repairs on said houses will nearly, if not quite, absorb all the rents

arising from the same, and have no hesitation in saying that during the present war, the rents of said stores will be a small and uncertain reliance for the support of a family. Deponents say that the property is elegantly situated on Broad street, and that capitalists will probably be induced to pay full and fair prices for the same as an investment of their surplus money. Deponents say that, considering the condition of Mrs. Davis and her family, they believe that she will be benefited by the proposed sale of said property, and that, in their opinion, the estate cannot suffer by the proposed change.

R. R. GOETCHIUS,<br>JNO. J. MCKENDREE."

" Sworn to and subscribed before me, this the 31st day of August, 1863.
WILEY WILLIAMS,<br>Notary Public Muscogee County, Georgia."

"AT CHAMBERS, September 2, 1863.

" Having considered the foregoing petition of William Schley, trustee for Mrs. Anna Maria Davis, together with the several affidavits thereto attached, as well as the exhibit from the will of the late Hon. William Schley relating to the estate created in part for the said Anna Maria Davis and her four children; and having also examined the certified copy of the last will of the said late William Schley, deceased, exhibited to me with the foregoing petition; and it appearing to me that all the parties interested in the property mentioned in said will, have consented to the sale of the same; and being of the opinion, from the said petition, and the evidence under oath to said petition atached, that the sale of the property referred to will materially benefit the said *cestui que trust*, and will not injure the said trust estate, but may enhance the value and productiveness of the same—

" It is therefore ordered and decreed, that the said William Schley, trustee as aforesaid, shall have the power and authority to sell the three said brick stores and lots mentioned in said petition, at public auction sale, to the highest bidder, in the city of Columbus, giving reasonable and proper notice of the time and place of said sale. That the said William Schley, trustee as aforesaid, shall receive the purchase money for the same, and shall make a good and valid title to the purchaser or purchasers for the same, which shall bar and foreclose all the rights, title and claim of the said Anna Maria Davis and her said four children, and all persons claiming under them.

" And it is further ordered and decreed, that the said trustee shall have the power and authority to invest the proceeds arising from the sale of said houses and lots in state or Confederate States Bonds, which shall be held by him under the same trusts and for the same uses and intents as the said houses and lots are held by him under the provisions of the will of the said William Schley, deceased.

v 70—C

"It is further ordered, that the clerk of the superior court of Muscogee county enter the said petition, affidavits, extracts of the said will of the said William Schley, and this decree, upon the minutes of the superior court of said county, as required by law; and that the said clerk deliver a certified copy of the same to the said William Schley, trustee as aforesaid, upon the payment of costs.

Given under my hand officially.

EDMUND H. WORRILL, J. S. C. C. C."

"COLUMBUS, GA., August 24, 1863.

"The undersigned, legatees under the will of William Schley, deceased, late of the county of Richmond, Georgia, and *cestui que tusts* of the property described in the foregoing petition of William Schley, our trustee under said will, do hereby acknowledge due notice of the aforesaid application for leave to sell said property, and to invest the proceeds in Confederate bonds, and we hereby consent and agree that a decree be granted by the court for said sale and investment.

ANNA MARIA DAVIS,

Life tenant.

RICHARD H. DAVIS,

By his mother, Anna Maria Davis, guardian.

SARAH H. DAVIS.

THOS. F. RIDENHOUR,

In my own right, and in right of my wife.

CHARLOTTE TAYLOR.

ISABELLA B. SMITH.

CHARLOTTE F. RIDENHOUR."

"THE STATE OF GEORGIA—Muscogee County:

"Whereas, William Schley, Jr., of the county of Richmond, in said state, duly appointed by the last will and testament of the Hon. William Schley, deceased, as trustee for Mrs. Anna Maria Davis and her four children in said will named, of the county and state first aforesaid, did make application to the Hon. E. H. Worrill, judge of the superior court of the Chattahoochee circuit, in said state, for leave to sell the property hereinafter described, devised by the said Hon. William Schley, in his said will, to the said William Schley, in trust for the said Anna Maria Davis and for her four children therein named. And whereas, upon the petition of the said trustee and the evidence therewith submitted, all parties in said property consenting thereto, the said Hon. E. H. Worrill did heretofore, to-wit, on the second day of September, in the year eighteen hundred and sixty-three, make a decree, authorizing the said trustee, upon proper and reasonable notice to sell said property at public sale to the highest bidder; and that the said trustee should make a good and valid title to the purchaser for the same, which should convey and foreclose all the rights and title of the said Mrs. Anna Maria Davis and

ˉher said children, named in said will, in and to the same, which decree has been duly recorded by the clerk of the superior court of Muscogee county, as directed by law.

"And whereas, said trustee did duly advertise the sale of said property in a public newspaper published in the city of Columbus, as well as by printed handbills posted in said city, and employed Messrs. Rosette, Lawhon & Co., licensed auctioneers of said city, to sell the same.

"And whereas, the said property was offered for sale by said auctioneers, at the instance of said trustee, at public auction, in the city of. Columbus, in said county of Muscogee, on Wednesday, the seventeenth day of September, in the year eighteen hundred and sixty-three, within the usual hours of sale, to the highest bidder for cash, in pursuance of said advertisement; and J. Rhodes Browne being the highest bidder, the same was knocked off to him at the price of twenty-two thousand one hundred and fifty dollars.

"Now this indenture, made this, the seventeenth day of September, in the year eighteen hundred and sixty-three, between William Schley, as trustee for Mrs. Anna Maria Davis and her children, as aforesaid, and by authority of the decree aforesaid, of the first part, and J. Rhodes Browne, of the county and state first aforesaid, of the second part. Witnesseth that the said William Schley, trustee as aforesaid, for and in consideration of the sum of twenty-two thousand one hundred and fifty dollars, to him in hand paid by the said J. Rhodes Browne, at and before the sealing and delivery of these pres· ·ents, the receipt whereof is hereby acknowledged, doth hereby grant, bargain and sell to the said J. Rhodes Browne, his heirs and assigns, all that lot of land lying and being on the west side of Broad street, in the city of Columbus, between St. Clair and Crawford streets, and now occupied by John J. McKendree, Esq., as a store-house, having a front on Broad street of twenty-two feet, and running back one hundred and forty-seven feet ten inches to the original line of said lot, being a part of lot No.——, in the original plan and survey of said ·city, and now designated as tenement No. one hundred and twenty-seven, saving and excepting the alley on the west end of said lot, as heretofore detached and granted to.the use of the proprietors of said ·original lot, and to the use and benefit of which alley the said J. Rhodes Browne, his heirs and assigns, are entitled, in common with others, to the use of the same as an outlet to St. Clair street, together with all the rights, easements, improvements and privileges thereto belonging, or in any wise appertaining.

"To have and to hold the said lot and improvements hereby granted to the said J. Rhodes Browne and to his heirs and assigns, to his and their use and benefit forever. So that the said trustee, or the said Anna Maria Davis or her said children named in said will, or any person claiming under him or them. shall not hereafter have any

right, claim or title to said lot by virtue of any right heretofore vested in them.

"In testimony whereof the said William Schley, trustee as afore-said, has hereto set his hand and seal on the day above written.

WILLIAM SCHLEY [L. S.],

Trustee for Mrs. Anna M. Davis and her children..

Recorded September 23, 1863. F. M. BROOKS, Clerk.

Signed, sealed and delivered in presence of ALFRED IVERSON,

WILEY WILLIAMS,

Notary Public Muscogee county Georgia."

Here the defendant closed his case. This record presents for our consideration and determination various questions, none of which, although argued with great learning and ability, are in the view we take of this case, material to the real issues which it presents, except such as relate to the rights of the plaintiffs to maintain this suit,. and to the execution of the power conferred upon the trustee under the will to convert the property bequeathed in trust for Mrs. Anna Maria Davis, her children, and grandchildren.

In order to recover in ejectment, the lessors of the plaintiffs must rely upon the strength of their own title and not upon the weakness of their adversary's; the defendants' possession will prevail against anything but a good title in the lessors of the plaintiff or a perfect right to the possession of the premises.

1. The demise from William Schley as executor of the will is not available in this suit; in that character it is evident from the very terms of the instrument, he took no title to the lots in question. They are devised to him and Maxwell, "their heirs, executors, administrators and assigns as trustees" for the testator's daughter, Anna Maria Davis, and such of her children as in said will are thereinafter named, and they are thereby expressly nominated and constituted such trustees. The title was conveyed to the trustees and not to the executors. *Expressio unius est exclusio alterius.*

2. There can be no recovery upon the demise from the

Browns and Smiths, including Mrs. Corbin, because neither by operation of law nor by any species of conveyance, did the title ever pass out of the trustees and vest in them. In no view of this case could they become the owners of this title, so long as their grandmother, Mrs. Davis, was in life, to say nothing of the continuance of the lives of their own mothers respectively. There is no doubt, from the clearly expressed desires of the testator, as contained in his skillfully drawn will, that the property was held in trust for Mrs. Davis during her life ; that the trustees were compelled to leave her in the possession of the same, and to permit her to enjoy the entire rents, issues and profits arising therefrom for her own use and support, and after her death to apply the entire income to the support of her children named in the will, or such of them as might survive her, so long as such of them lived. Until the interests of these successive *cestuis que vie*, first Mrs. Davis, and after her her four children, were fully satisfied, the contingency had not happened upon which the title to the property could pass to these lessors of the plaintiff. On the argument here, this position appeared so impregnable that it was not assailed.

3. The next and last demise we shall consider is that from the trustee, which brings up for determination what appears to us as the only question material to the issues involved. Was this sale and conveyance to the tenant in possession a valid execution of the power to the trustees to sell and re-invest this trust property, in certain events which had been foreseen and provided for by the testator ? The trustees are enjoined not to permit any part of the property to be carried or conveyed beyond the limits of the state of Georgia, nor to be used or expended for Mrs. Davis, as the true object, intent and meaning of the conveyance to them was " to secure a support for her during her life, from the rents, issues, profits and income of the said property, without in any wise lessening or impairing the principal. " By this same item of the will, ten thousand

dollars in money was given these trustees, which they were directed to invest in " safe and profitable stocks, or other property and securities, which would yield a fair and good income, " and which they were to employ in carrying out this trust. Two objects are here quite apparent, the first is the maintenance and support of the *cestui que trust*, the second, the preservation intact of the *corpus* of the property bequeathed. Similar provisions had been made in favor of other children of the testator ; and foreseeing that circumstances might arise which would render it impracticable to carry out these features of his scheme without a change of the property and a re-investment in different property, he repeated the restrictions above mentioned, and by item 8th of his will, he expressly ordered and directed that none of the property therein before conveyed in trust should be used or applied to the payment of any debts then due or that might thereafter be contracted by his daughter, Anna Maria Davis, or his sons, Dr. Wm. K. Schley or George H. Schley, and further that the property should not be sold, or otherwise disposed of except to be reinvested in better or more profitable stock or property, and conveyed to the same trusts and for the same uses and intents as was the property sold, even though a court of equity should be disposed to do so, by the wish and consent of all the parties interested, and of the trustees, as, to the disgrace of those courts, both in England and the United States, they have often done in cases of wills and marriage settlements, thereby defeating the will and true intent of the testator, and of the victimized wife, in cases of marriage settlements. " This restricted power applies to the property in question and also to that conveyed for the families of William K. and George H. Schley, which constituted all the trust property conveyed by previous items of the will. Here express power is given either to the trustees or court of chancery to sell for re-investment, whenever one or the other shall deem such re-investment proper to increase the income from the trust property.

Under no other circumstances and for no other purpose can either, by the terms of this will, dispose of the *corpus* of the estate. Any course upon the part of the trustee which would have deprived Mrs. Davis of support, or which would have brought any portion of the trust estate to sale for that purpose, would have defeated two of the main objects which the testator had in creating the trust.

Now was this sale for re-investment necessary to secure Mrs. Davis a support? If it was not, or if that in which the re-investment of the proceeds of the sale was to be made was not likely to yield a better income than the property as it then stood, and this fact was apparent, then it might have been deemed an abuse of discretion on the part of the trustee, if he had acted without any authority from the court of chancery, or had made misrepresentations to that court; and the purchaser, if he had concurred in this abuse of trust would have taken no title to the estate thus purchased. But from the mere fact of the re-investment of the proceeds of the sale having resulted unfortunately, we should be going very far to impute such serious dereliction from duty either to this trustee or the purchaser from him. The wisest and most sagacious could not at that time foresee the result of the war then raging, or predict the effect that result would have upon securities issued by either the state or Confederate government. It was quite apparent from the papers before the chancellor when he ordered this sale for re-investment, that the property did not yield income enough to support the *cestui que vie*, and that an encroachment upon the *corpus* would have to be made for that purpose, unless some more profitable investment could be found; and he thought from all the facts, after what seems to us a most careful investigation, that the proceeds invested in state or confederate securities would preserve the estate and afford the support with which it was charged. By changing one species of property for another, none of the provisions of this trust would

be violated or would fail, but the main purposes of its creation would be literally fulfilled.

Coming to this conclusion, the sale was ordered, and J. Rhodes Brown became the purchaser at a fair price, and took the trustee's conveyance to the fee of the property, and went into possession, where he remained undisturbed for about nineteen years. Being a purchaser *bona fide* and for a valuable consideration, it would take more than a mere mistake of judgment, as disclosed by events subsequent to the sale and conveyance, to divest his title. Both courts of law and courts of equity have gone very far to protect such purchasers, even where they held under doubtful or irregular sales or defective and incorrect judgments of courts having jurisdiction of the subject-matter. *Dotterer vs. Pike, 60 Ga., 29; Mills vs. Banks, 3 P. Wms. R. 1.; Iverson vs. Saulsbury, trustee, 65 Ga., 724, 730.*

It is insisted by the plaintiff in error, that the children of Mrs. Smith and Mrs. Brown, who were *in esse* at the time this decree of sale was made, should have had notice and been made parties to the proceeding through their guardian *ad litem*, which was not done, and therefore the proceeding is not valid as to them, and the purchaser took nothing but the estate, to which the life tenants (all of whom were parties) were entitled. Now whether these persons took as contingent remaindermen, or as remaindermen at the expiration of the trust, is quite immaterial; in any event the vesting of the estate in them would depend upon the contingency of their being in existence, upon the termination of the two preceding life estates, and when this decree was had all the life tenants were in being; in fact, Mrs. Davis did not die until 1879, and Mrs. Ridenhour, one of the life tenants, is still living. It was, therefore, then impossible to ascertain in whom the estate would vest upon the falling in of the several life estates. They would, it seems to us, have no more right to be made parties to such a proceeding than would an heir-apparent to a proceeding to sell the estate of his ancestor. This

court in the case of *Dean vs. Central Cotton Press Company, 64 Ga., 670,* has gone far towards the decision of this question. The principle therein announced, that the executor represented an unborn contingent remainderman, and that no one else could represent him, embraces the present case. But the interest which the Code requires to be represented in such proceedings must, from the very nature of things, be certain and vested, and not wholly uncertain and contingent. §§2327, 4221to 4224, prescribing how trust property is to be sold and the parties to be served with notice of the proceeding, makes no mention of persons who may have such interests. It is a general principle that courts do nothing nugatory and vain, and to attempt what is here insisted upon would be impossible. They have no prescience that would enable them to designate the persons who would take upon such a contingency. Judges have no more power than other men to look into the future, and they are not expected to be able to tell what even a day may bring forth.

Daniel's Chancery Practice 266, lays down this rule upon the subject : " In cases of this sort it is necessary that not only he who has the first estate of inheritance should be before the court, but that the intermediate remaindermen for life should be parties. The same rule will, as we have seen before, apply where the intermediate estate is contingent or executory, provided the person to take is ascertained ; although where the person to take is not ascertained, it is sufficient to have before the court the trustees to support the contingent remainders and the person *in esse* entitled to the first vested estate of inheritance. " It was impossible to ascertain, when this decree for a sale was had, whether the Browns and Smiths, who it is now claimed should have been parties to the proceeding would ultimately take the title, as their mothers were then in life. If this decree had been made after the death of Mrs. Brown and Mrs. Smith, then the question of making them parties would have rested upon a solid foundation, and under that state

of things the point could have been urged with propriety. Their mothers, as we have seen, were parties, and proper parties, to the proceeding.

This, with other facts, distinguishes the present case from *The City Council of Augusta vs. Radcliffe et al., 66 Ga., 469,* so confidently relied upon by the eminent counsel for the plaintiffs in error. In that case the trustee had power, ' by and with the consent and approbation of the person or persons for whose use he might at any time hold the property, to sell and dispose thereof without the order or decree of any court, and reinvest the proceeds of the sale upon the terms of the trust, and none other.' Under this power a portion of the property was sold with the consent of the life tenant, who had a daughter of full age then in life, who was to take the remainder in case she survived her mother, but if her mother survived her, and she the daughter left issue living, then such issue should take in place of the daughter. The daughter gave no consent to this sale, but did afterwards upon two applications to change trustees, state that the property had been sold to the city of Augusta. She died before her mother, leaving six children, and upon the death of the mother these children succeeded under the deed to the estate. Upon suit brought by them, to recover the premises sold, this court held that the sale and conveyance of the property was not, under its peculiar terms, a valid execution of the power. Judge Simmons, who presided in Judge Crawford's place, delivering the opinion of the court, p. 474, said: "The law is exceedingly strict in requiring a precise compliance with the directions of the donor as expressed in the deed," 2 Washburn, 608. " Deeds of this sort usually give the trustee power to sell by and with the consent of the life tenant. This deed does not do that. If it had been the intention of the grantor for the trustee to sell only with the consent of Mrs. Finn (the life tenant), how much easier and simpler it would have been to so have expressed it. But instead

of that he empowers him to sell with the consent and approval of the person or persons for whose use he may at any time hold. " The daughter's recognition of the fact that the sale was made, was not equivalent to the consent and approval she was required to give in order to render the sale a valid execution of the power; the property being held for her use, as well as her mother's at the time it was sold and conveyed.

It is manifest that there is scarcely any point of resemblance between this power and that contained in George Schley's will, and there is still less similarity in the mode of executing the two powers. In that case the terms of the power were not complied with in its execution, and the title did not pass to the purchaser, whereas in this all the conditions upon which the power was to be executed were followed, and a court of competent jurisdiction interpreted the grant, and by its decree settled its meaning. The sale was made and the conveyance executed under this decree. The title passed out of the trustee and vested in the defendant in error. The demise, then, from the trustee in this action of ejectment, rests upon no title whatever. The admitted facts and documents in the case, show conclusively that he had neither title nor the right of possession, and as this is true of all the other lessors of the plaintiff, the court below very properly found for the defendant in the original suit.

This dispenses with the necessity of determining whether the defendant in error had a good prescriptive title; we have shown that he had a perfect title to the maintenance of which there is no necessity to call in the aid of prescription. Neither would it avail to show how this title should have passed out of the trustees and vested in the ultimate remainderman, since they were properly and legally divested of it before the happening of the contingency upon which they could have demanded a conveyance. They must look to the property in which the proceeds of the sale of this were invested, if they would assert their rights under the will of their ancestor. This sale was a full ad-

ministration of the particular property in question, in accordance with the testator's desires as expressed in his will.

Judgment affirmed.