IN THE

# SUPREME COURT OF GEORGIA,

## AT ATLANTA.

### OCTOBER TERM, 1888.

PRESENT—L. E. BLECKLEY, . . . . . . . . . CHIEF JUSTICE.
       M. H. BLANDFORD, . . . . . . . . ASSOCIATE "
       T. J. SIMMONS, . . . . . . . . . ASSOCIATE "

THE EAST ROME TOWN COMPANY *vs.* COTHRAN *et al.*\*

1. A deed made in 1857, conveying realty to a man "for the use, benefit, advantage, and in trust for his wife and the child she now has and those she may hereafter have, to be held by him in trust for said wife and child during his natural life, and upon his death the same to go to them or the survivor or survivors of them in fee simple; or should he survive his said wife and children, to him in fee simple, free from the trust; but so long as any of the *cestuis que trust* survive, to be held by him as their trustee, free from his debts, liabilities and contracts," passed to him in trust the legal estate for the term of his life and no longer, the alternative remainder in his family or himself being a legal remainder not covered by or embraced in the trust.

2. The rule that when the trustee is barred by prescription, the beneficiaries are also barred, means that when the legal estate is barred, so is the equitable estate. In any given case, therefore, the bar is restricted to the measure of the legal estate which the trustee takes by the conveyance. When he takes the legal fee, the bar extends to the whole fee, legal and equitable; but when he takes less than the fee, he represents less than the fee, and the bar is restricted to what he represents.

\*This case was argued at the last term, and the decision reserved.

3. According to *Hill vs. Printup* 48 *Ga.* 452, a trust estate in which minors are the beneficiaries cannot be legally sold on the petition of the trustee unless the minors are made parties by a representative properly appointed.

4. Granting that a sale made under an order obtained without representation of the minors, might be duly confirmed at chambers, with such representation then had, the order of confirmation, if passed by a judge of the superior court who was of counsel when the original order was passed, would be voidable at the election of the minors after attaining majority.

5. The question of estoppel by standing by and seeing expensive improvements made upon the premises and failure to object, depending, in part, upon proof to be made at the trial, the discretion of the chancellor in granting a temporary injunction until the facts involved can be tried by a jury will not be controlled.

6. The same rule applies to the alleged equitable obligation to account for the substituted property which the trustee has put in place of the property now directly in controversy.

February 11, 1889.

Deeds. Estates. Trusts. Remainders. Prescription. Minors. Parties. Practice in superior court. Estoppel. Injunction. Equity. Before Judge Maddox. Floyd county. At chambers, May 18, 1888.

Reported in the decision.

UNDERWOOD & ROWELL, HOPKINS & GLENN and J. BRANHAM, for plaintiffs in error.

C. A. THORNWELL, C. N. FEATHERSTON, HALSTED SMITH, DEAN & EWING and HARPER HAMILTON, *contra.*

BLECKLEY, Chief Justice.

1. The deed presented for our construction was made by Alfred Shorter to D. B. Hamilton, December 12th, 1857. The essential terms of it are set out in the first head-note to this opinion. Except as there appear, there were no words of inheritance. The question is, what was the legal estate taken by Hamilton as trustee?

According to our statute of 1821, words of inheritance are not required in a conveyance to pass a fee simple, but the authorities all concur that in creating a trust estate, the trustee, without words of inheritance—and in case of wills with them,—takes only such quantity of estate as is necessary for the purposes of the trust. Lewin's Law of Trusts, 216, 217; Perry on Trusts, 312–319, inclusive; Code, §2340.

Trying the present deed by this rule, and whether we consider the purpose of the trust or the terms of the deed, we find that the trust estate was limited to the life of the trustee. It is obvious that, upon his death, there would be nothing for his successor in the trust to take. Thus the deed itself expressly limits the legal estate which he takes in trust, to the term of his own life. It could not by any possibility exist longer, though by the death of all his family it might terminate sooner. The alternative remainder in his family or in himself, whether regarded as vested or contingent, was a legal remainder—as much a legal estate as was the title of the trustee for the period embraced in the trust. It is manifest that the legal title of the trustee cannot envelop within it legal remainders. The only remainders that can be so enveloped are equitable remainders.

The construction which we give to this deed is supported by a number of cases heretofore decided by this court. The one most directly in point is that of *Franke vs. Berkner*, 67 *Ga.* 264. Jacob Russell was the trustee, and the limitation was, " to have and to hold said property and all rights of property to the said Jacob Russell, his heirs and assigns, forever upon the trusts following, to wit : to the use of said John Berkner and his wife, Margaret Berkner, and the children of her body lawfully begotten by said John Berkner, to the exclusion of his and their children by any other marriage,

during the natural——of said John and Margaret, and during the natural life of the survivors; at and from the death of said John and Margaret this trust to cease, and the property and increase thereof to be equally divided between their children, the issue of their marriage, to the exclusion of all others, and to said children forever; the grandchildren, in case the parents be dead, to take the place of their parents." It was held that the legal estate of Jacob Russell, the trustee, was limited in duration to the lives of John and Margaret Berkner, and that although their children were joint beneficiaries with them, so long as they (the parents) lived, the remainder to the children was a legal estate, and that the trustee did not represent that remainder. To the same effect, so far as this case is concerned, is *Rogers vs. Pace*, 75 *Ga.* 436. And almost equally decisive is *Bull vs. Walker*, 71 *Ga.* 195. *Vanzant vs. Bigham,* 76 *Ga.* 759, looks in the same direction. The aggregate weight of the four cases which we have cited would seem to furnish irresistible authority for the construction which we have announced. At first view, the case of *Wingfield vs. Virgin*, 51 *Ga.* 139, would seem to militate with these decisions, but it is susceptible of an easy reconciliation with their purport. Upon looking at the terms of the conveyance in *Wingfield vs. Virgin*, it is obvious that the question of whether the children took a legal remainder, had it been directly made, could have been decided in the affirmative; but that question was not made, inasmuch as the purpose of the bill filed by the children and their mother was to reinstate the trust and obtain an accounting for the income of the property, not after the death of the parents, but for a period which had elapsed whilst they were alive. The decision of the court was that that bill was barred. Why was it barred? Because Wylie, the purchaser, had

bought in good faith and held for seven years or more as against the trust title, and that title, though it may have been limited to the life of Weems and wife, was barred by such holding. The trust estate was therefore gone, and of course, with it, the right to recover income to which the trustee or the beneficiaries pending his term would have been entitled. The court did not undertake to adjudicate how long the trust estate continued, but only that the trustee being barred, the beneficiaries could not have the trust reinstated so as to have the trust term go on for their benefit, and so as to recover the rents and profits to which the trustee had the legal title. It was not and never has been decided that the children, after the death of Weems and wife, could not recover the property upon their legal title as remaindermen.

The like criticism may be made on the case of *Varner vs. Gunn*, 61 *Ga.* 54. There, also, the proceeding was had during the life of the tenant for life, and there could be no doubt that the trust covered the whole period of her life. So in the present case, the trustee would be barred, and consequently the beneficiaries for whom he held would be also barred, during the period for which, as trustee, he held the legal title, to wit, for the life of himself or of his family, whichsoever should die first.

Another authority which might be adduced, were it a correct decision, would be the case of the *City Council of Augusta vs. Radcliffe*, 66 *Ga.* 469 ; but that case, on account of an oversight, was not well decided. The deed there adjudicated upon was made in 1847, to a trustee in trust forever, for the sole and separate use of a married woman during coverture, and then during her widowhood or natural life, and at her death or marriage the premises were to go to and vest in her child

or children then in life; and in case of the death of any such child during the mother's life or widowhood, leaving issue alive, such issue were to take in place of the parent; and if such child or the issue of such child were female, then the trustee was to hold its part or portion in trust for her sole and separate use, not liable to the control, disposal or debts of any husband of such female beneficiary, with power in the trustee, by and with the consent and approbation of the person or persons for whose use he might at any time hold the property, and, without the decree or order of any court, to sell and dispose of it and reinvest the proceeds in other property, real or personal, upon the same trust and no other. What the court overlooked was the provision in the deed that the trustee was to hold, not only for the mother, but for any female child, or any female issue of a child; and this led to a misconstruction of the terms of the deed in respect to the power of sale. The deed meant that the power was to be exercised with the consent of the mother, if exercised in her lifetime, or with the consent of a daughter or granddaughter if exercised after the mother's death for the daughter's or granddaughter's benefit. Had all the terms of the deed been noticed and attended to by the court, the decision in that case must have been that the trustee took the fee, and that the power of sale was well executed. In this view of the case I am authorized by Judge Simmons, who wrote the opinion of the court, to say that he now fully concurs.

In the following cases, in so far as the quantity of the estate taken by the trustee was essential to the decision, it will be seen that the trustee took the legal fee:

*Ford vs. Cook,* 73 *Ga.* 215 ; *Knorr vs. Raymond,* 73 *Ga.* 749; *Milledge vs. Bryan,* 49 *Ga.* 397; *Askew vs. Patterson,* 53 *Ga.* 209 ; *Schley vs. Brown,* 70 *Ga.* 64 ; *Mont-*

*gomery vs. Masonic Hall,* 70 *Ga.* 38; *Brady vs. Walters,*
55 *Ga.* 25; *Schnell vs. Toomer,* 56 *Ga.* 168; *Sparks vs.*
*Roberts,* 65 *Ga.* 571; *Merritt vs. Merritt,* 66 *Ga.* 324;
*Crawley vs. Richardson,* 78 *Ga.* 213.

In the last (*Crawley vs. Richardson*) it was held, that
the trust continued until the beneficiary attained his
majority, but it will be noticed that this limitation was
not put upon the trust by the terms of the deed, as in
the case we are now considering, but was annexed by
operation of law; and we do not think there is any
incompatibility in the two positions, that where the
conveyance limits the estate to less than a fee the trus-
tee never has a fee; but where the law passes the fee
by executing the trust, the fee which was before in the
trustee passes out of him into the beneficiary. In the
former case, the law finds no fee in the trustee to exe-
cute; in the latter it does find such fee there, and passes
it, on the happening of some event, over to the benefi-
ciary.

The case of *Dean vs. The Cotton Press Co.,* 64 *Ga.*
670, is special, and rests on its own facts. That was
not the case of an ordinary trust, but of an executor
who sold the property to pay debts and legacies. The
power to sell for such a purpose, whether derived from
the general law or from a decree in the given case, nec-
essarily embraces the power to sell the whole estate,
whether full title be in the executor as such or not.
For instance, under our law, an administrator, after ob-
taining a proper order, can sell the fee in realty, al-
though as administrator he takes no title, but a mere
power to administer for the payment of debts and the
making of distribution.

2. Having determined that the legal estate of Ham-
ilton as trustee did not extend to the fee, it follows that
no title has matured in the purchasers holding under

him and adversely to him, through his conveyance made to John R. Freeman, on February 14, 1860, one of his children being still a minor when the present bill was filed. The rule that when the trustee is barred by prescription, the beneficiaries are also barred, means that when the legal estate is barred, so is the equitable estate. In any given case, therefore, the bar is restricted to the measure of the legal estate which the trustee takes by the conveyance. When he takes the legal fee in trust, the bar extends to the whole fee, legal and equitable; but when he takes less than the fee, he represents less than the fee, and the bar is restricted to what he represents.

3. The deed to Freeman was made in pursuance of an order granted at chambers by the judge of the superior court, on February 10th, 1860, which order was procured by the application of Hamilton, the trustee, joined to the written consent of his wife. His children then being minors, were not made parties, and were not represented by guardians *ad litem*, or otherwise. According to *Hill vs. Printup*, 48 *Ga.* 452, a trust estate in which minors are the beneficiaries cannot be legally sold on the petition of the trustee, unless the minors are made parties by a representative properly appointed.

4. After the sale to Freeman, several transactions took place which we will now briefly notice. On May 3d, 1860, Hamilton executed a deed of settlement by which he put certain slaves in lieu of the land sold, settling them upon the same terms, limitations and conditions as prescribed in the deed from Shorter to himself creating the original trust estate. On May 7th, 1860, the judge of the superior court, at chambers, passed an order ratifying this reinvestment, and ordering the slaves to be appropriated in lieu of the lands. On July 5th,

1867, Hamilton executed a deed to himself as trustee, substituting certain city property in Rome in lieu of the slaves, said slaves having been lost by the results of the war. On March 24th, 1870, the judge of the superior court, at chambers, upon the petition of Hamilton and wife, passed an order authorizing the sale of this city property, and the reinvestment of the proceeds. On April 14th, 1871, Hamilton, by a deed from himself to himself as trustee, conveyed part of a certain plantation, called "The Palestine plantation," as a reinvestment of the proceeds of said city property. To none of the proceedings for investment or change of investment were the children made parties. On October 19th, 1875, the judge of the superior court, on the petition of Hamilton and wife, and after the appointment of a guardian *ad litem* for the children, passed at chambers an order ratifying, confirming and approving the sale of the original trust land to Freeman, and declaring the conveyance valid and legal to convey all the right, title and interest of the parties, including Mrs. Hamilton and her children. This order was passed after the guardian *ad litem* had investigated the subject, and by his answer had reported in favor of such confirmation; but the judge who presided was disqualified, having been one of the counsel who petitioned for the original order under which the sale to Freeman was made.

It is urged that this order of confirmation cured all defects in the title to Freeman, and this might be so, perhaps, had the judge not been disqualified; but his disqualification rendered the order voidable at the election of the minors after attaining their majority, there having been no express consent in writing waiving his disqualification. Code, §205; *McMillan vs. Nichols*, 62 *Ga.* 36; *Rogers vs. Felker*, 77 *Ga.* 46.

It is urged upon us that as Judge Underwood was

absent when the business was transacted by his copart-
ner in the firm name, and knew nothing of it, and never
received any compensation for the service which his co-
partner in the name of the firm rendered, and did not be-
come judge till long afterwards, he was free from dis-
qualification; but we think otherwise. What his part-
ner did in the firm name was done by the firm, and upon
the firm responsibility, and this was so whether compen-
sation was charged or not. When counsel, as counsel,
render service gratuitously, and put themselves on record
as of counsel for one of the parties, they are not there-
after eligible to adjudicate upon the results of such
service, whether they have acted gratuitously or for
compensation. Considerations of public policy are in-
volved in the question. Freeman on Judgments, §144 *et
seq.* Had this been an order of sale, and not merely an
order of confirmation, and had the sale taken place un-
der it before it was set aside, it is not improbable that
the transaction would have been good, notwithstanding
the order was voidable; but as nothing has been done
or was to be done in execution of the order, we are of
opinion that it is still voidable, on the part at least of
the minor child who had not attained majority when
the present case was brought.

5, 6. The bill with which we are now dealing was
filed by purchasers of some of the property embraced in
the deed from Shorter to Hamilton, who made their
purchases from the East Rome Town Company, a cor-
poration which holds by a title derived from Freeman.
These purchasers, complainants in the bill, object to
paying up the purchase money, on the ground that
their vendor, the East Rome Town Company, cannot
convey a good title, and they pray that the company be
enjoined from disposing of their notes, etc., alleging
that it is insolvent if the title passed by Freeman be in-

valid. The judge of the superior court granted the injunction; and we have seen that there is such infirmity in the title of the company, upon the face of the papers, as would prevent it from passing to these purchasers a title good against the remainder interest of Hamilton's children.

It is said that the children are barred by the act of 1876, (code, §2925, b.) We hardly think this act will apply as against the legal remainders, but even if it will as to those of the children who have been *sui juris* three years or more, it will certainly not apply to the one who is still a minor, or to others, if such there be, who have not passed their majority and failed to sue for three years. As the question here is the validity of the title, not in part but in whole, it is unnecessary to say more touching the act of 1876.

It is also urged that the minors are estopped by reason of standing by and seeing valuable improvements put upon this property without giving notice of their title, or making objections; also that they are subject to account for the benefit which they have derived and are to derive from the "Palestine plantation." How far these matters may affect the final result of the cause, in the light of *Iverson vs. Saulsbury*, 65 *Ga.* 724, and perhaps other cases, we need not stop to consider. Granting that the law will be found to be against the children on these points, the exact facts are to be ascertained by a trial of the cause, if the parties choose to try it, and we do not feel called upon to disturb the grant of a temporary injunction, and control the discretion of the judge in granting that injunction. It is better that all the facts should be developed before a jury, and we leave the general merits to abide that scrutiny. We have held up the case a long time for thorough study, and have considered it patiently and labo-

riously. If any error was committed in granting the injunction, we are unable to discover it.

Judgment affirmed.